**In the United States District Court
for the Northern District of Illinois
Eastern Division**

| | | |
|---|---|---|
| AF HOLDINGS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 12 C 3516 |
| | ) | |
| COMCAST CABLE COMMUNICATIONS, | ) | Judge Feinerman |
| | ) | |
| Defendant. | ) | Magistrate Judge Kim |

**MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE**

**I.      INTRODUCTION**

All four movants are in the business of producing pornographic movies.  AF Holdings,

LLC ("AF") is an entity organized under the laws of St. Kitt and Nevis; Pacific Century

International, Ltd. ("Pacific") is a Maltese company; Sunlust Pictures, LLC ("Sunlust") is a

California corporation; and First Time Videos, LLC ("First Time") is a Nevada corporation.

Comcast Cable Communications LLC ("Comcast"), a Delaware corporation, is an internet

service provider in the business of providing access to the Internet to its customers.  Plaintiffs'

amended motion contends that this Court should find Comcast in contempt because although

Comcast served plaintiffs' counsel with four letters objecting to each of the four subpoenas

issued by this Court (collectively "Objection Letters"), those letters were untimely served more

than 14 days after Comcast was served with the subpoenas.  This Court should exercise its

discretion to deny plaintiffs' motion and instead consider the merits of Comcast's objections and

find the subpoenas unenforceable for the following reasons:

1

*First*, this Court has adequate discretion under Rule 45 to consider Comcast's objections to plaintiffs' subpoenas because the timeliness of written objections is not dispositive.

*Second*, pursuant to *Yousuf v. Samantar*, 451 F.3d 248 (D.C. Cir. 2006), this court may consider Comcast's untimely objections because the subpoenas are overbroad and exceed the bounds of fair discovery, Comcast is a nonparty acting in good faith, and Comcast's counsel was in contact with counsel for the plaintiffs.

*Third*, plaintiffs should not be allowed to profit from unfair litigation tactics whereby they use the offices of the Court as an inexpensive means to gain Doe defendants' personal information and coerce "settlements" from them. It is evident in these cases – and the multitude of cases filed by plaintiffs and other pornographers represented by their counsel – that plaintiffs have no interest in actually litigating their claims against the Doe defendants, but simply seek to use the Court and its subpoena powers to obtain sufficient information to shake down the Doe defendants. The Federal Rules require the Court to deny discovery "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). This case requires such relief.

## II. BACKGROUND

This case involves a motion to enforce subpoenas from four different judicial proceedings, one in the federal district court for the Southern District of Texas and three in the federal district court for the Southern District of Florida.

On March 6, 2012, AF filed suit against 31 John Doe defendants in the United States District Court for the Southern District of Florida.[1] On December 6, 2011, Pacific filed suit against 37 John Doe defendants in the United States District Court for the Southern District of

---

[1] Docket number 12cv20922.

Texas.[2] On March 6, 2012, Sunlust filed suit against 120 John Doe defendants in the Southern District of Florida,[3] and on the same date First Time filed suit against 76 John Doe defendants in the same court.[4] In each case, the plaintiffs were represented by the same firm that represents them in the instant proceeding. These proceedings will hereafter be referred to as the "Underlying Actions."

As noted, all of the defendants in the Underlying Actions are unnamed. However, each defendant is associated with an Internet Protocol ("IP") address which is set forth in Exhibits attached to the respective complaints. An IP address is a unique number assigned to each host, network and computer that participates in a network that uses an Internet Protocol for communication.[5] Comcast Cable Communications LLC ("Comcast") is a Delaware corporation which provides services to its subscribers as an Internet Service Provider ("ISP"). As an ISP, Comcast has access to each of its subscribers' names, street addresses and email addresses. Thus, in the normal course of business, Comcast can identify by name and street address a person associated with each IP address for which Comcast serves as an ISP.

Comcast is not a defendant in the Underlying Actions. However, of the 264 defendants in the Underlying Actions, 88 have Comcast as their ISP. Although the names and addresses associated with IP addresses are not publicly available, the geographic location of the devices using those IP address are available to anyone through numerous free and publicly available websites. For example, Exhibit "A" from the complaint filed by Sunlust in Florida is attached to this memorandum as Exhibit "A." The first IP address which shows Comcast as the ISP is 174.48.147.120. Using http://freegeoip.net/static/index.html, one of numerous free geolocation

---

[2] Docket number 11cv04430.
[3] Docket number 12cv20920.
[4] Docket number 12cv20921.
[5] See the entry for "IP Address" at Wikipedia.org

websites, it can be determined that the device identified by that IP address is in or near

Hollywood, Florida. In fact every IP address associated with Comcast in Exhibit "A" is located

in Florida. Going further with the other IP addresses in the remaining three Underlying Actions,

it can be determined that every single device identified by an IP address associated with Comcast

is located in a state other than Illinois.

Each of the four Underlying Actions is nearly identical to the other. The plaintiffs allege

that they are the owners of "adult entertainment" films, that certain copyrighted films were

illegally copied by the John Does acting through a BitTorrent file sharing system, and that

plaintiffs are entitled to statutory damages and other relief. The joinder of all of the John Doe

defendants is premised upon plaintiffs' allegations that:

> . . . defendants participated in a civil conspiracy to illegally
> reproduce and distribute the video. The Defendants intentionally
> entered a swarm for the purpose of collaborating with the other
> Defendants and numerous third parties to conduct illegal
> distribution and reproduction of the particular Video file. The
> Defendants were collectively engaged in the conspiracy even if
> there were not engaged in the swarm contemporaneously because
> they all took concerted action that contributed to the chain of data
> distribution. Plaintiff has asserted a right to relief jointly and
> severally against the Doe Defendants.

*Sunlust Pictures, LLC v. Does 1-120*, Case No. 12-cv-20920, Compl. ¶10.

Instead of having the instant subpoenas issue from the judicial districts in which the

Underlying Actions are pending, the plaintiffs elected to have the four subpoenas issue from the

Northern District of Illinois. The subpoenas seek to compel Comcast to disclose the names and

street addresses of the 88 Comcast subscribers mentioned earlier.

## III.   ARGUMENT

### A.   This Court Has Discretion to Consider Comcast's Objections to the Subpoenas

The plaintiffs' motion for a rule to show cause is premised upon the fact that Comcast did

not deliver written objections to the subpoenas within 14 days.[6]

While plaintiffs suggest that a timely failure to file a written objection is dispositive, in

fact this Court has discretion to consider Comcast's objections notwithstanding the failure to

serve a timely objection. In *Yousuf v. Samantar,* 451 F.3d 248, 371 U.S.App.D.C. 329 (2006),

the court noted that "in unusual circumstances and for good cause," a court has the discretion to

consider an untimely objection to a subpoena. The court stated:

> Certain factors may guide the district court's discretion, for example,
> whether (1) the subpoena is 'overbroad on its face and exceeds the bounds
> of fair discovery'; (2) the subpoenaed witness is a nonparty acting in good
> faith; and (3) counsel for the witness was in contact with counsel for the
> party issuing the subpoena prior to filing its formal objection.

*See also, Concord Boat Corp. v. Brunswick Corp*., 169 F.R.D. 44, 48 (S.D.N.Y. 1966);

*Alexander v. FBI*, 186 F.R.D. 21, 34-36 (D.D.C. 1998); 9 James W. Moore et al., *Moore's*

*Federal Practice* at §45.04[2] (3d ed. 2004).  Each of these three criteria will be discussed

*seriatim*.

### 1.   The Subpoenas Are Overbroad and Exceed The Bounds of Fair Discovery

Subpoenas identical to the ones at issue have been found by numerous courts—including

the Northern District of Illinois—to be overbroad and exceeding the bounds of fair discovery.  A

subpoena determined to be overbroad is deemed to impose an "undue burden" on the party

---

[6] Federal Rule 45(c)(2)(B) provides that an "objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."

served with the subpoena and is subject to being quashed. *Pacific Century Int'l, Ltd. v. John Does, 1-37*, 2012 WL 1072312 (N.D. Ill. March 30, 2012).

To determine the existence of undue burden under Rule 45, a court must compare the burden of compliance with the benefit of production of the material sought. *Northwestern Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004). Non-party status is a significant factor when comparing the burden of compliance and the benefit of production. *United States v. Amerigroup Ill., Inc.*, No. 02 C 6074, 2005 WL 3111972, at *4 (N.D. Ill. Oct. 21, 2005). Where, as here, the Underlying Actions have significant procedural defects and the purpose of the subpoenas is manifestly not to obtain information for use in the Underlying Actions but to extract money from numerous individuals whom the plaintiffs know are not subject to the territorial jurisdiction of this Court, any burden put upon a non-party to identify such individuals is an **undue** burden. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 n.17 (1978) ("[W]hen the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied.").[7]

The complaints in the Underlying Actions rely on the "swarm joinder" theory aggressively promoted in numerous cases by the plaintiffs and other pornographic film producers. Rule 20 governs the permissive joinder of parties and provides that defendants may be joined in one action where a plaintiff states a right to relief "arising out of the same transaction, occurrence, or series of transactions or occurrences," and "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2)(A) & (B). The

---

[7] *Accord Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980) (pre-Rule 26 discovery should be denied where the court concludes that discovery "would not uncover [the defendants'] identities, or that the complaint would be dismissed on other grounds"); *Exponential Biotherapies, Inc. v. Houthoff Buruma N.V.*, 638 F. Supp. 2d 1, 11 (D.D.C. 2009) (plaintiff must "reasonably 'demonstrate[] that it can supplement its jurisdictional allegations through discovery'").

plaintiffs in the Underlying Actions argue that each and every owner of an IP address which allegedly participates in a BitTorrent "swarm" is acting in concert to violate the plaintiffs' copyrighted works. However, as Comcast has pointed out in its Objection Letters, the exhibits attached to the plaintiffs' complaints reflect that the alleged illegal activity of the different IP addresses occurred on different days and times, which negates the allegation that all of the Doe defendants in a single complaint were part of a single "swarm." For example, according to the exhibit attached to the complaint, the alleged "swarm" in the Underlying Action brought by First Time began on October 5, 2011, and ended on March 4, 2012. If the joinder of the Doe defendants cannot be satisfied in the Underlying Actions, compelling discovery of these alleged co-conspirators is not proper and would constitute an undue burden under Rule 45.

The plaintiffs allege in their complaints that the Doe defendants "took concerted action" and "were collectively engaged in the conspiracy even if they were not engaged in the swarm contemporaneously." However, courts have found that "[m]uch of the BitTorrent protocol operates invisibly to the user—after downloading a file, subsequent uploading takes place automatically if the user fails to close the program." *In Re: BitTorrent Adult Film Copyright Infringement Cases*, 2012 WL 1570765, *19 (E.D.N.Y. May 1, 2012). Thus, the user plays no role in these interactions. Indeed, "[t]he bare fact that Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world." *Hard Drive Prods., Inc. v. Does 1-188*, 809 F.Supp.2d 1150, 1163 (N.D. Cal. 2011). *See also Patrick Collins, Inc. v. John Does 1-23*, Case No. 11-cv-15231, at *6 (E.D. Mich. Mar. 26, 2012) ("[S]imply alleging the use of BitTorrent technology … does not comport with the requirements under Rule 20(a) for permissive joinder.")

Moreover, the fact that the alleged downloads took place over multi-week or multi-month periods further undermines the allegation that all of the Doe defendants were part of a single "swarm." Thus, even assuming, *arguendo*, that the Doe defendants actually infringed the plaintiffs' copyrights, the assertion that they acted in concert is rebutted by the plaintiffs' own complaints. *See Patrick Collins, Inc. v. John Does 1-23*, Case No. 11-cv-15231, at *6 (E.D. Mich. Mar. 26, 2012) ("The nearly three month time span covering this activity suggests the likely possibility that there was never common activity linking the 23 addresses in this matter."); *K-Beech, Inc. v. John Does 1-41*, No. V-11-46, 2012 U.S. Dist. LEXIS 31803, *10 (S.D. Tex. Mar. 8, 2012) ("While [plaintiff] provides the precise date, hour, minute and second at which it alleges that each Doe Defendant was observed to be sharing the torrent of the copyrighted work, [plaintiff] does not indicate how long each Doe Defendant was in the swarm or if any of the Doe Defendants were part of the swarm contemporaneously."); *Raw Films, Ltd. v. Does 1-32*, 2011 WL 6840590, at *2 (N.D. Ga. Dec. 29, 2011) (stating that the "differing dates and times of each Defendant's alleged sharing do not allow for an inference that the Defendants were acting in concert"); *Raw Films, Ltd. v. Does 1-32*, 2011 WL 6182025 at *2 (E.D. Va. 2011) (conduct over a three month time span was "insufficient to meet the standards of joinder set forth in Rule 20"). Consequently, the plaintiffs have not satisfied the requirement of establishing that the Doe defendants participated in the same "transaction" or "occurrence" within the meaning of Rule 20.

Under the Federal Rules, discovery is only appropriate if the information sought is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1); *see also Williams*, 2008 WL 68680, at *3 ("The scope of material obtainable by a Rule 45 subpoena is as broad as permitted under the discovery rules….") (citations omitted). "When evaluating relevancy, "'a court is not required to blind itself to the purpose for which a party

8

seeks information.'" *Id.* (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 (1978)). Accordingly, "'when the purpose of a discovery request is to gather information for use in proceedings other than the pending suit, discovery properly is denied.'" *Id.*

It may seem odd to this Court that it is asked to consider joinder issues that ordinarily would be within the province of the courts hearing the Underlying Actions. This unusual situation results from blatant forum-shopping by the plaintiffs. The plaintiffs could have easily had the subpoenas issue from the courts where the Underlying Actions are pending.[8] In that case, the judge with responsibility for the Underlying Action would have been able to consider the issues raised in this proceeding. There is, however, a tremendous and unfair advantage to the plaintiffs when they unilaterally caption the subpoena with a foreign forum and move to compel enforcement of their subpoenas there. The Doe defendants, none of whom live in Illinois, cannot challenge the propriety of the subpoena in the jurisdictions where the cases are pending (Texas and Florida) but can only challenge it in the tribunals which issued them, *i.e.,* the Northern District of Illinois. Some Doe defendants have tried unsuccessfully to challenge subpoenas served on other ISPs.[9] Thus, unless a Doe defendant retains Chicago counsel to fight the subpoena or unless his or her ISP interposes an objection, personal information will be turned over to the plaintiffs.

What happens when this information is turned over to the plaintiffs? Attached as Exhibit "C" is a motion filed by a Doe defendant in an action currently pending before Judge Chang. The correspondence from plaintiffs' law firm which is attached to the motion tells the story vividly.

---

[8] Comcast has registered agents listed with both the Texas and Florida Secretary of States, just as it has one listed with the Illinois Secretary of State. The information sought by the subpoena is electronic, which means it can be accessed by Comcast in all 50 states.
[9] See Exhibit "B" which is an order entered in one of the Underlying Actions.

As Judge Holderman recently pointed out in *Pacific Century Int'l v. John Does 1-37*, 2012 WL 1072312 (N.D. Ill. Mar. 30, 2012, *motion to alter or amend denied* May 21, 2012), plaintiffs' strategy in filing these cases effectively precludes consideration of joinder issues at a later point in the proceedings. Indeed, due to plaintiffs' litigation strategy, which includes avoiding review on the merits except at a preliminary, *ex parte* stage, any determination regarding the propriety of joining the Doe defendants is made without any factual record by a court that is unaware of any fact specific defenses which would strongly weigh against allowing joinder in this action. On this issue, one court has observed: "Joining Defendants to resolve what at least superficially appears to be a relatively straightforward case would in fact transform it into a cumbersome procedural albatross." *Pacific Century*, 2011 WL 5117424, at *3. Therefore, principles of fundamental fairness and judicial economy require that permissive joinder not be allowed in these cases.

For these reasons, the subpoenas at issue are overbroad, exceed the bounds of fair discovery, and impose an undue burden on Comcast.

### 2. The Subpoena Is Directed To a Nonparty Acting In Good Faith

Comcast also meets the second *Yousef* criteria insofar as it is indisputably a nonparty to the Underlying Actions and it has acted in good faith. Comcast is not a party to the underlying suits and its sole interest in the instant proceeding is to ensure that a valid court order is entered under 47 U.S.C. §551(c)(2)(B) before it turns over any of its subscribers' names and street addresses. Thus, the requirement that "the subpoenaed witness is a nonparty acting in good faith" has been met.

### 3.    Counsel For Comcast Was In Contact With Counsel For The Plaintiffs

The third *Yousef* criteria requires that counsel for the nonparty be in contact with counsel

for the party that issued the subpoena.  This criteria is easily met in this case.  Comcast's counsel

who deals with subpoenas is John Seiver in Washington, D.C., of the law firm Davis Wright

Tremaine LLP. The undersigned is Chicago counsel who works with Mr. Seiver.  The plaintiffs

in this case, and numerous other cases in Illinois and other jurisdictions, are represented by an

attorney from the Prenda Law Group.  All during the first half of 2012, there has been virtually

continuous communication between Mr. Seiver and Mr. Paul Duffy, a Chicago attorney

associated with Prenda.  In 2012 alone, Mr. Seiver has sent Mr. Duffy approximately 20 written

objections on behalf of Comcast to an equal number of subpoenas.[10]  The objections are nearly

identical, as are the subpoenas.  All of these written objections were timely served except for the

four in the instant case.  The four objections directed to the subpoenas at issue and served by Mr.

Seiver on April 24, 2012, are attached collectively as Exhibit "E" to this Memorandum.

Thus, "counsel for the witness was in contact with counsel for the party issuing the

subpoena prior to filing its formal objection."  Counsel for the plaintiffs knew that objections

would be made to the subpoenas and they knew what those objections would be.  Comcast

submits that this element of the *Yousuf* case is fully met.

### B.    Plaintiffs Should Not Be Allowed to Profit From Unfair Litigation Tactics

Producers of pornographic movies, such as the plaintiffs here, are using "John Doe" suits

*en masse* to identify copyright infringers.  As of February 2012, the lawyers representing Hard

Drive in this proceeding have to date filed at least 118 such lawsuits against over 15,000 John

---

[10] One of many such objection letters is attached at Exhibit "D."

Does in the last year and a half alone. *See* Decl. of Charles E. Piehl and Ex. A, *AF Holdings,*

*LLC v. Does 1-135*, No. 11 C 3336 (N.D. Cal. Feb. 22, 2012), ECF Nos. 43, 43-1 (providing a

list of cases filed by Hard Drive's law firm as of February 24, 2012). Since March 1, 2012,

plaintiffs' lawyers have filed 34 "pornography swarm" cases in the Northern District of Illinois

alone.

        As another court explained, the *modus operandi* of plaintiffs' litigation tactics in these

cases is:

> (1) a plaintiff sues anywhere from a few to thousands of Doe
> defendants for copyright infringement in one action; (2) the
> plaintiff seeks leave to take early discovery; (3) once the plaintiff
> obtains the identities of the IP subscribers through early discovery,
> it serves the subscribers with a settlement demand; (4) the
> subscribers, often embarrassed about the prospect of being named
> in a suit involving pornographic movies, settle. Thus, these mass
> copyright infringement cases have emerged as a strong tool for
> leveraging settlements – a tool whose efficiency is largely derived
> from the plaintiffs' success in avoiding the filing fees for multiple
> suits and gaining early access en masse to the identities of alleged
> infringers.

*MCGIP, LLC v. Doe*, No. 11 C 2331, 2011 WL 4352110, at \*4 n.5 (N.D. Cal. Sept. 16, 2011).

        In cases like this, plaintiffs, like the ones in the Underlying Actions, use a Doe

defendant's concern with being publicly charged with downloading pornographic films to wrest

settlements from identified subscribers. Many courts evaluating similar cases have shared this

concern. *See, e.g., Pacific Century Int'l v. John Does 1-37, et al.*, 2012 WL 1072312, at \*3 (N.D.

Ill. Mar. 30, 2012) ("the subscribers, often embarrassed about the prospect of being named in a

suit involving pornographic movies, settle"); *Digital Sin*, 2012 WL 263491, at \*3 ("This

concern, and its potential impact on social and economic relationships, could compel a defendant

entirely innocent of the alleged conduct to enter an extortionate settlement"); *SBO Pictures*, 2011

WL 6002620, at \*3 (defendants "whether guilty of copyright infringement or not – would then

have to decide whether to pay money to retain legal assistance to fight the claim that he or she

illegally downloaded sexually explicit materials, or pay the money demanded. This creates great

potential for a coercive and unjust 'settlement'").

In *K-Beech, Inc. v. John Does 1-85*, 11cv469 (E.D. Va. 2011), the court, in quashing

subpoenas, stated:

> This course of conduct indicates that the plaintiffs have used the
> offices of the Court as an inexpensive means to gain the Doe
> defendants' personal information and coerce payment from them.
> The plaintiffs seemingly have no interest in actually litigating the
> cases, but rather simply have used the Court and its subpoena
> powers to obtain sufficient information to shake down the John
> Does.

*See e.g., Lightspeed v. Does 1-1000*, No. 10 C 5604 (N.D. Ill.) (Order of Manning, J. dated Mar.

31, 2011); *Patrick Collins, Inc. v. Does 1-118,* No. 10-CV-92 (N.D.W..V. 2010); *Digiprotect*

*USA Corp. v. Does 1-240*, No. 10 Civ. 8760 (S.D.N.Y. 2011). The instant cases are obvious

instances where the court should deny discovery "to protect a party or person from annoyance,

embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

In addition to the procedural improprieties discussed *supra*, plaintiffs' tactics "deny the

federal courts additional revenue from filing fees in the suits that should be filed to obtain the

information the plaintif[f] desire[s]." *Pacific Century Int'l v. John Does 1-37, et al.*, 2012 WL

1072312, at *11 n.15 (N.D. Ill. Mar. 30, 2012). Thus, in this case, plaintiffs filed four single

cases and paid total filing fees of $1,400. If the plaintiffs had not improperly joined unrelated

parties, their filing fees for suing 264 defendants would have been $92,400. "Postponing a

determination on joinder in these cases 'results in lost revenue of perhaps millions of dollars

(from lost filing fees) and only encourages plaintiffs in copyright actions to join (or misjoin) as

many doe defendants as possible.'" *In Re BitTorrent Adult Film Copyright Infringement Cases*,

No. 2:11-cv-03995, at *22-23 (E.D.N.Y. May 1, 2012) (quoting *K-Beech, Inc. v. John Does 1-41*, 2012 WL 773683, at *5 (S.D. Tex. 2012)).

## IV. CONCLUSION

Rule 45(c)(3)(A) provides as follows:

On timely motion, the issuing court must quash or modify a subpoena that:

* * *

    (iv) subjects a person to undue burden.

In *Pacific Century Int'l; Ltd. v. John Does 1-37*, 2012 WL 1072312, *5 (N.D. Ill. Mar. 30, 2012), the court stated:

> [w]hat the plaintiffs may not do, however, is improperly use court processes by attempting to gain information about hundreds of IP addresses located all over the country in a single action, especially when many of those addresses fall outside of the court's jurisdiction.

Thus, the subpoenas were quashed for all but one John Doe whose IP address was in the Northern District of Illinois. Requiring the ISPs to produce anything further, the court held, was an undue burden.

However, Comcast is not the only person subjected to an undue burden. Consider the John Does who are forced to litigate a determinative issue in a forum which does not otherwise have personal jurisdiction over them, the judges presiding in jurisdictions outside of Illinois that are having critical decisions made in their litigation without their input or consideration, and the federal judiciary which is being deprived of filing fees by the abusive use of subpoenas are all suffering undue burdens. All of these entities are suffering an undue burden due to plaintiffs' machinations. The plaintiffs and their law firm have been relentless in pursuing their business model of using the federal courts as an "inexpensive means . . . to coerce payment" from the John Does. This Court has the ability to stop this conduct, at least in the instant case.

Comcast submits that the proper remedy is for this Court to quash the subpoenas and

allow the plaintiffs to issue new subpoenas from the courts in which the Underlying Actions are

pending. This would allow the judges presiding over the Underlying Actions to make their own

determinations as to the merits of the joinder issues and the Does will not be prejudiced by being

forced to litigate the validity of subpoenas in a foreign jurisdiction which has no connection

whatsoever with the plaintiffs' claims.


                                        Respectfully submitted,

                                        /s/ Paul F. Stack_____

Paul F, Stack
Mark W. Wallin
STACK & O'CONNOR CHARTERED
140 S. Dearborn St., Suite 411
Chicago, Illinois 60603
(312) 782-0690


Of counsel:

John D. Seiver
Lisa Zycherman
DAVIS WRIGHT TREMAINE LLP
1919 Pennsylvania Ave., N.W., Suite 800
Washington, DC 20006
(202) 973-4200

Counsel for Non-Party Comcast Cable
Communications, LLC