# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| HARD DRIVE PRODUCTS, | ) | |
| | ) | |
| | ) | Case No. 1:12-cv-01532 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Honorable Edmond E. Chang.** |
| | ) | |
| DOES 1-54, | ) | **Magistrate Judge Susan E. Cox** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

<u>**DEFENDANT 75.5.75.57'S MOTION TO QUASH SUBPOENA ISSUED TO AT&T
INTERNET SERVICES**</u>

Defendant identified as Internet Protocol Number 75.5.75.57 (January 7, 2012), through his counsel Greer, Burns & Crain, Ltd., moves this Court to quash the subpoena duces tecum served upon AT&T Internet Services, without prejudice as to the filing of any subsequent motions under Fed. R. Civ. P. 12, and states as follows:

<u>**FACTS**</u>

The following facts are set out in the attached declaration (**Exhibit 1**) of Defendant 75.5.75.57 (January 7, 2012):

1.      In a letter dated May 3, 2012, Defendant received a letter from AT&T stating that an Internet Protocol number assigned to him on January 7, 2012 at 06:22:34 UTC (12:22 am Central Time), 75.5.75.57 was named as a Defendant in the above-captioned case.

2.       The May 3, 2012 letter further stated that Plaintiff was seeking Defendant's personal information, including telephone number and email address, pursuant to a subpoena issued on April 20, 2012 (letter attached as **Declaration Exhibit A** with recipient's name and address redacted).

3.       Defendant understands that the Complaint in this action relates to the downloading and file sharing of the adult video "Amateur Allure – Lola Foxx."

4.       Defendant is 73 years old and doesn't download any movies on his computer.

5.       Defendant has an internet connection in his home that includes a wireless router.

6.       Defendant found out during the last week of December, 2011, that his router was not secured with a password, and that anyone within range of his router could access the internet through his router.

7.       Defendant purchased a new wireless router on January 31, 2012 and has since secured his router with a password.

8.       Defendant does not visit any internet web sites that have adult videos and Defendant has never downloaded any adult video.

9.       The only people that have access to any computer of Defendant that uses Defendant's wireless router are Defendant, his wife and his great grandson who is only 4 years old and only watches Thomas the Train videos on Defendant's computer when Defendant is with him.

9.       Defendant does not know who might have been in range of his wireless router on January 12, 2012 at 12:22 am that might have downloaded any movies and he did not authorize anyone else to access the internet through his router.

10.      Defendant is not awake, and certainly is not on the computer at 12:22 in the morning.

11.      Based on his schedule, Defendant knows that he was not on his computer at 12:22 am on Saturday, January 7, 2012.

12.      Defendant shuts off his computer overnight.

13.      Defendant's wife does not go onto the internet.

14.      Defendant and his wife are a Christian family and don't believe in websites that would carry adult videos as described in the Complaint in this action.

15. Defendant was not involved in the downloading or file sharing of the adult video described in the Complaint in this action and should not be named as a Defendant in this action.

16. Involving Defendant further in this lawsuit will be detrimental to his finances and his health.

17. The acts alleged in the Complaint go against Defendant's religion.

18. Defendant has an expectation of privacy and expects that AT&T maintain his identity and his personal information, such as telephone number and email address private and confidential.

The following facts are set out in the attached declaration (Exhibit 2) of Kevin W. Guynn, counsel for Defendant:

19. Kevin Guynn, counsel for this Defendant, sent an email to Paul Duffy, an attorney at Prenda Law who has appeared for Plaintiff in this case, on May 14, 2012 (**Declaration Exhibit B**).

20. In the email, Defendant offered to have a court appointed computer expert analyze Defendant's computers to confirm whether the allegedly downloaded videos were present on Defendant's computers.

21. Defendant proposed that if the expert determined that the videos were not present, that Plaintiff pay the cost of the expert, and dismiss the action as to Defendant, but that if the expert determined that the videos were present, then Defendant would pay the cost of the expert.

22. On May 15, 2012, Mark Lutz, who identified himself as an attorney with Prenda Law, telephoned Kevin Guynn, and declined the proposal made by Defendant.

23. Mr. Lutz stated that it was too early in the case for Plaintiff to know whether someone else's computer might have been involved in the downloading of the video, and thus could not agree to dismissal of the Defendant.

24. Mr. Lutz stated that Defendant could be dismissed from each case that his IP address was identified in by the payment of $3400 for each lawsuit.

25. Mr. Lutz further stated that this Court would be denying Defendant's Motion to Quash the subpoena and that once that happened, the required payment for settlement would go up.

## STANDING

Defendant has standing to challenge the subpoena issued by the Plaintiff to AT&T Internet Services in that AT&T has notified Defendant that he is about to be identified to Plaintiff as a result of the subpoena, his personal and private information, well beyond even his identifying information, is to be disclosed to Plaintiff and that Defendant's modem was assigned the Internet Protocol number 75.5.75.57 on January 7, 2012, one of the Defendants listed in Exhibit A to the Complaint. By providing Defendant with the attached notice, AT&T has effectively transferred to Defendant the right and obligation to object to the subpoena since AT&T has indicated it will not provide any objection on Defendant's behalf.

The Seventh Circuit Court of Appeals has held that a party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests.

"The defendant urges that the prosecution had no standing or authority to move to quash the subpoena. We disagree. A party has standing to move to quash a subpoena addressed to another if the subpoena infringes upon the movant's legitimate interests. _In re Grand Jury,_ 619 F.2d 1022, 1027 (3rd Cir. 1980). The prosecution's standing rested upon its interest in preventing undue lengthening of the trial, undue harassment of its witness, and prejudicial over-emphasis on Gasbarri's credibility."

U.S. v. Raineri, 670 F.2d 702, 712 (7th cir. 1982)

In the present case, the Defendant has legitimate interests which would be infringed upon if the subpoena is not quashed as to him, namely, his first amendment right to privacy, his personal privacy, his being identified and publically associated with conduct that is repugnant to him and against his religious values, and for which he had no involvement, and for which Plaintiff cannot assert with any certainty that he did have any involvement. See also footnote 3, infra.

In a similar case, VPR Internationale v. Does 1017, C.D. IL, 2:11-cv-02068-HAB-DGB, in which the plaintiff was represented by John Steele of Steele Hansmeier PLLC, a lawyer and law firm that appear to be closely associated with Prenda Law and the current Plaintiff[1], It was

---

[1] In an Order dated April 29, 2011, Judge Baker identified other plaintiffs represented by Mr. Steele, including the present Plaintiff, Hard Drive Productions, Inc. (Document 15, page 2).

reported by Judge Baker, in an Order (**Exhibit 3**) denying certification for interlocutory review, that "VPR argues that, if served with a subpoena, the ISPs are required by law to notify each targeted subscriber and the Does may then move the court to quash the subpoenas." Thus, the lawyer who represents this Plaintiff in other cases has told a Federal Judge that "Does may move the court to quash the subpoenas." For this Plaintiff to come in to this Court and argue otherwise would constitute a serious misrepresentation to one of the Courts.

## ARGUMENT

This lawsuit is one of hundreds that have been filed by the Prenda Law Inc. and its predecessor/associated firm, Steele, Hansmeier PLLC and /or Steele Law Firm[2], with whom they share a suite in Chicago. In these cases, dozens to thousands of Doe defendants are joined in a single action, the Plaintiff files a motion for expedited discovery, obtains court authorization to serve subpoenas on ISPs who then notify their customers that unless the customer files a motion in court to quash the subpoena, the ISP will release confidential indentifying information to the Plaintiff's attorneys. The Plaintiff's attorneys then use this information to coerce the identified persons to "settle" the litigation by paying several thousands of dollars, before being publically named as downloading pornographic materials. See description by Judge Holderman in Pacific Century International, Ltd. v. John Does 1-37 (and others), 12 C 1057 (N.D. IL Docket #23 at page 6, March 30, 2012)(**Exhibit 4**).

Courts are becoming increasingly dismayed by these suits, with critical decisions being rendered in many jurisdictions, in addition to the foregoing decision of Judges Holderman and Baker, such as In re: Bittorrent Adult Film Copyright Infringement Cases, 2:12-cv-01147-JS-

---

[2] Prenda Law Inc. lists its address as 161 N. Clark Street, Suite 3200, Chicago, IL, 60601, Steele Hansmeier PLLC lists its address as 161 N. Clark Street, Suite 4700, Chicago, IL 60601, Steel Law Firm lists its address as 161 N. Clark Street, Suite 3200, Chicago, IL 60601. Paul Duffy has filed an appearance in this case listing an email address of paduffy@wefightprivacy.com and John L. Steele (of Steele Hanmeier) has filed an appearance in a similar case, listing his email address as jlsteele@wefightpiracy.com. The Illinois ARDC records list his address as 161 N. Clark Street, Suite 3200, Chicago, IL 60601

GRB (E.D.N.Y Docket #4, May 1, 2012)(**Exhibit 5**)[3] and <u>AF Holdings LLC v. Does 1-135</u>, 5:11-cv-03336-LHK (N.D. CA Docket 42, February 23, 2012)(**Exhibit 6**).

The Courts are recognizing that these lawsuits are part of an overall pattern or business plan of extorting "settlement" money from identified Does, and there is no intent to actually move forward with the litigation after the "Does" have been identified.  In the <u>AF Holdings</u> case in California, upon Order of the Court for information, the Prenda Law firm stated that of the several thousand Does that had been identified in the 118 cases it had filed, not a single Doe had ever been served with the Complaint and Summons (see **Exhibit 6**, answer to question 9).

The Plaintiff here has cast a wide net in an attempt to identify the owners of various internet connection devices, such as modems and routers that were allegedly associated with the transfer of portions of an adult video.  Although the Complaint Exhibit A identifies IP Address 75.5.75.57 (January 7, 2012 – 06:22:34) as participating in the transfer, the person who AT&T has notified as owning a router being the assignee of that IP Address at that time, has provided a declaration that establishes that neither he, nor any authorized user of that computer equipment, was involved in the complained of activity.

Instead, it is declared that the computer equipment assigned that IP Address on January 7, 2012, was unsecured by a password, and anyone within range of his wireless roiuter would have had access to the internet through his computer equipment.[4]

Since Plaintiff cannot establish that the assignee of IP Address 75.5.75.57 (January 7, 2012 – 06:22:34) was the person that actually was involved in the activity complained of in the Complaint, the subpoena seeking to have AT&T reveal the identity of the assignee of that IP Address should be quashed.

The Magistrate in <u>In re: Bittorrent</u> stated that the likelihood that the payer of the bill sent by ISPs was the actual downloader/infringer in these cases is not high, and therefore the danger in allowing Plaintiff's to engage in this wide net type of discovery, especially to discover private information beyond that required to identify potential defendants and serve them with a Summons and Complaint is high (see **Exhibit 5** pages 6-8).  In that case, the Court severely

---

[3] The Court in <u>In re: Bittorrent</u> specifically recognized that the individual Does identified by their IP addresses would have the right to challenge the propriety of the subpoena being issued (see decision at page 24, paragraph (3)).

[4] The factual defenses raised by the Defendant in this case are very similar to several of the defenses raised in <u>In re: Bittorrent</u>, **Exhibit 5** at page 5.

limited the type of information that the Plaintiff was entitled to seek from the ISP (as well as limiting the subpoena to only a single Defendant per case).

As Doe 75.5.75.57 has stated in the attached declaration, he regards his personal information, including telephone number and email address private, and disclosure of this information to Plaintiff's attorneys should not be permitted. Further, Plaintiff's attorneys have no need for this information, since they now know that this Defendant is represented by counsel and therefore under the ethical rules in the State of Illinois, they are prohibited from directly contacting this Defendant, other than to serve the Complaint and Summons.

The Courts in their decisions have been identifying other substantive issues with these types of cases, such as improper joinder of defendants, see In re: Bittorrent, **Exhibit 5** at pages 18-21, but it is premature for Defendant to be asserting any Motion under Rule 12 until it has actually been served with the Summons and Complaint. Defendant will leave it to the Court to determine whether any action is desired by the Court sua sponte at this time.

To have the recipient of the AT&T letter in this case identified to Plaintiff will only subject the recipient to further harassment by the Plaintiff, even though the recipient was not involved in the complained of activity. Further, the very nature of the complained of activity is repugnant to the recipient of the AT&T letter and he should not be involved further with this Complaint or this Action.

In an effort to resolve this matter, as well as a related case pending before Judge Dow, that this same Defendant is involved in, Defendant's counsel sent an email to an attorney at Plaintiff's counsel Prenda Law who filed an appearance in the companion case. Defendant offered to make his computers available to a Court appointed computer expert to confirm that the alleged downloaded movie was not on Defendant's hard drive.

Plaintiff's counsel, Mr. Mark Lutz, called Defendant's counsel on March 15, 2012, and declined Plaintiff's offer. Mr. Lutz stated that Plaintiff could not agree with the proposal in that it could be that someone other than Defendant might have performed the downloading. In other words, Mr. Lutz would not agree to dismiss this Defendant because someone other than this Defendant might be the real infringer!

Mr. Lutz did state that this Defendant could be dismissed from the action by payment of $3400 for each action in which his assigned IP address was listed. He stated that after the actual

identity was revealed (since he was sure that this Court would deny the Motion to Quash) the price for settlement would increase.

The Magistrate in In re Bittorrent found such refusal to investigate the innocence of an ISP subscriber quite problematical (Exhibit 5 at pages 8-11).

Judge Baker has similar questions himself: "Could expedited discovery be used to wrest quick settlements, even from people who have done nothing wrong?  The embarrassment of public exposure might be too great, the legal system too dauting and expensive, for some to ask whether VPR has competent evidence to prove its case." **Exhibit 3** at page 3.

Thus, Prenda law has confirmed that the Plaintiff's sole interest in filing this litigation is to extort a settlement payment from this Defendant, regardless of his guilt or innocence.  The power of the court through the subpoena process should not be abused in such a manner.

In view of the above, Defendant submits that this Court should quash the subpoena to AT&T with respect to IP address 75.5.75.57.

Dated this 19th day of March, 2012.

> Greer, Burns & Crain Ltd.
>
> Attorneys for Defendant, Internet Protocol Number 75.5.75.57 (January 7, 2012),
>
>
> _____/s/ Kevin W. Guynn_____
> Kevin W. Guynn
> Greer, Burns & Crain, Ltd.
> 300 South Wacker Drive, Suite 2500
> Chicago, Illinois 60606
> 312.360.0080
> 312.360.9315 (facsimile)
> kguynn@gbclaw.net

## CERTIFICATE OF SERVICE

I hereby certify that on the 19th day of March, 2012, I will electronically file the foregoing with the Clerk of the Court, using the CM/ECF system.  I will also serve a copy of the foregoing Notice and Motion on AT&T Internet Services via their fax number 919-319-8154, as per their Notice letter.

Greer, Burns & Crain Ltd.

Attorneys for Defendant, Internet Protocol Number 75.5.75.57 (January 7, 2012)

_____/s/ Kevin W. Guynn_____
Kevin W. Guynn
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
kguynn@gbclaw.net

# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| HARD DRIVE PRODUCTIONS, INC. | ) | |
| | ) | |
| | ) | Case No. 1:12-cv-01532 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Honorable Edmond E. Chang** |
| | ) | |
| DOES 1-54, | ) | **Magistrate Judge Susan E. Cox** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

<u>**DECLARATION OF DEFENDANT 75.5.75.57 (January 7, 2012)**</u>

Defendant, Internet Protocol Number 75.5.75.57 (January 7, 2012), states as follows:

1.     I received a letter dated May 3, 2012 from AT&T stating that the assignee of an Internet Protocol number assigned to my router on January 7, 2012 at 06:22:34 UTC (12:22 am Central Time), 75.5.75.57 was named as a defendant in the above-captioned case.

2.     The May 3, 2012 letter further stated that Plaintiff was seeking my personal information pursuant to a subpoena issued on April 20, 2012 (letter attached as Exhibit A with my name and address redacted).

3.     I understand that the Complaint in this action relates to the downloading and file sharing of the adult video "Amateur Allure – Lola Foxx."

4.     I am 73 years old and don't download any movies on my computer.

5.     I have an internet connection in my home that includes a wireless router.

6.     I found out during the last week of December, 2011, that my wireless router were not secured with a password, and that anyone within range of my router could access the internet through my router.

1

7.      On January 31, 2012 I purchased a new wireless router which I have since secured with a password.

8.      I do not visit any internet web sites that have adult videos and I have never downloaded any adult video and the idea of such videos is repugnant to me and my religion.

9.      The only people that have access to any computer of mine that uses my wireless router are myself, my wife and my great grandson who is only 4 years old and only watches Thomas the Train videos on my computer when I am with him.

10.     I do not know who might have been in range of my wireless router on January 7, 2012 at 12:32 am that might have downloaded any movies and I did not authorize anyone else to access the internet through my router.

11.     I am not awake, and certainly not on the computer at 12:32 in the morning.

12.     Based on my habits, I know I was not on my computer at 12:32 am on Saturday, January 7, 2012.

13.     I shut off my computer overnight, although my router remains on.

14.     My wife does not go onto the internet.

15.     We are a Christian family and don't believe in websites that would carry adult videos as described in the Complaint in this action.

16.     I was not involved in the downloading or file sharing of the adult video described in the Complaint in this action and should not be named as a Defendant in this action.

17.     Involving me further in this lawsuit will be detrimental to my finances and my health.

18.     I have an expectation of privacy and expect that my identity, personal information such as telephone number and email address, will be kept private and confidential by AT&T when I access the internet for lawful purposes through my wireless router.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 14th day of May, 2012.

/75.5.75.57/

Internet Protocol Address 75.5.75.57 (January 7, 2012)

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of May, 2012, I will electronically file the foregoing

with the Clerk of the Court, using the CM/ECF system.

Greer, Burns & Crain Ltd.

Attorneys for Defendant, Internet Protocol Number
75.5.75.57 (January 7, 2012),

_____/s/ Kevin W. Guynn_____
Kevin W. Guynn
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
kguynn@gbclaw.net

EXHIBIT 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| HARD DRIVE PRODUCTIONS, INC. | ) | |
| | ) | |
| | ) | Case No. 1:12-cv-01532 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Honorable Edmond E. Chang** |
| | ) | |
| DOES 1-54, | ) | **Magistrate Judge Susan E. Cox** |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| | ) | |

## DECLARATION OF KEVIN W. GUYNN

Kevin W. Guynn, counsel for Defendant, Internet Protocol Number 75.5.75.57 (January 7, 2012), states as follows:

1.       I sent an email to Paul Duffy, an attorney at Prenda Law who has appeared for Plaintiff in this case on May 14, 2012 (Declaration Exhibit B).

2.       In the email, Defendant offered to have a court appointed computer expert analyze Defendant's computers to confirm whether the allegedly downloaded videos were present on Defendant's computers.

3.       Defendant proposed that if the expert determined that the videos were not present, that Plaintiff pay the cost of the expert, and dismiss the action as to Defendant, but that if the expert determined that the videos were present, then Defendant would pay the cost of the expert.

4.       On May 15, 2012, Mark Lutz, who identified himself as an attorney with Prenda Law, telephoned me, and declined the proposal made by Defendant.

5.       Mr. Lutz stated that it was too early in the case for Plaintiff to know whether someone else's computer might have been involved in the downloading of the video, and thus

could not agree to dismissal of the Defendant, and therefore was not interested in checking Defendant's computers.

6.      Mr. Lutz stated that Defendant could be dismissed from each case that his IP address was identified in by the payment of $3400 for each lawsuit.

7.      Mr. Lutz further stated that this Court would be denying Defendant's Motion to Quash the subpoena and that once that happened, the required payment for settlement would go up.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 17th day of May, 2012.

        /Kevin W. Guynn/

        Attorney for Defendant, Internet Protocol Number 75.5.75.57

(January 7, 2012)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 17th day of May, 2012, I will electronically file the foregoing

with the Clerk of the Court, using the CM/ECF system.

/Kevin W. Guynn/
Greer, Burns & Crain Ltd.

Attorneys for Defendant, Internet Protocol Number
75.5.75.57 (January 7, 2012),

# EXHIBIT 3

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| VPR INTERNATIONALE, | ) | |
| | ) | |
| Plaintiff, | ) | 11-2068 |
| | ) | |
| v. | ) | |
| | ) | |
| DOES 1 - 1017, individually and as | ) | |
| representatives of a class, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

The plaintiff, VPR Internationale, is a Montreal, Quebec-based producer of adult entertainment content.  VPR has filed this complaint against 1,017 Doe defendants identified only by Internet Protocol ("IP") address.  VPR alleges that these defendants have distributed adult videos in violation of VPR's copyrights. To determine the identity of the 1,017 alleged copyright infringers, VPR filed an *ex parte* motion for expedited discovery so that it could immediately serve subpoenas on Internet service providers ("ISPs") to determine the subscriber and location associated with each IP address.  The court denied the motion for expedited discovery [9].  VPR filed an *ex parte* motion for reconsideration, which was denied on March 22, 2011, by text order.

VPR has now filed a motion to certify for interlocutory review the court's denial of its motion for expedited discovery.  VPR seeks certification for one controlling question of law:

Defendants' identifies are unknown to the Plaintiff.  Instead, each Defendant is associated with an Internet Protocol (IP) address.  Internet Service Providers (ISPs) know identity and contact information associated with each IP address.  Is the Plaintiff to entitled to discover this information by serving ISPs with subpoenas *duces tecum* under Fed. R. Civ. P. 45?

Fed. R. Civ. P. 26(d)(1) prohibits a party from "seek[ing] discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order."  In this case, VPR may seek expedited discovery only by court order.

Arguing in favor of certification, VPR directs the court's attention to its motion for reconsideration.  In its memorandum, VPR concedes that the relief sought falls outside traditional adversarial procedure, and states that there is no legal basis to name the ISP providers as defendants.  VPR compares the Doe defendants' IP addresses to "records of *who* rented *which* car at a busy car rental agency, in that IP addresses are like cars "leased by subscribers. If a

1

plaintiff was injured by a rental car, the plaintiff can discover the information on who leased the car from the agency by specifying the license plate of the offending vehicle and the date and time when the injury occurred.  Without access to the agency's records, all the plaintiff has is the identity of the rental agency, but not who was driving the rental car."  The comparison is not apt. The rental agency owns the car and is a potential defendant, so the adversarial process would yield the driver's information.  And such information is not necessarily confidential; accident reports and police records may also identify the driver.

In this case, not a single one of the plaintiff's 1,017 potential adversaries has been identified.  There is no adversarial process yet.  Moreover, VPR ignores the fact that IP subscribers are not necessarily copyright infringers.  Carolyn Thompson writes in an MSNBC article of a raid by federal agents on a home that was linked to downloaded child pornography. The identity and location of the subscriber were provided by the ISP.  The desktop computer, iPhones, and iPads of the homeowner and his wife were seized in the raid.  Federal agents returned the equipment after determining that no one at the home had downloaded the illegal material.  Agents eventually traced the downloads to a neighbor who had used multiple IP subscribers' Wi-Fi connections  (including a secure connection from the State University of New York).  *See* Carolyn Thompson, *Bizarre Pornography Raid Underscores Wi-Fi Privacy Risks* (April 25, 2011), http://www.msnbc.msn.com/id/42740201/ns/technology_and_science-wireless/

The list of IP addresses attached to VPR's complaint suggests, in at least some instances, a similar disconnect between IP subscriber and copyright infringer.  The ISPs include a number of universities, such as Carnegie Mellon, Columbia, and the University of Minnesota, as well as corporations and utility companies. Where an IP address might actually identify an individual subscriber and address the correlation is still far from perfect, as illustrated in the MSNBC article.  The infringer might be the subscriber, someone in the subscriber's household, a visitor with her laptop, a neighbor, or someone parked on the street at any given moment.

VPR argues that, if served with a subpoena, the ISPs are required by law to notify each targeted subscriber and the Does may then move the court to quash the subpoenas.  The potential filing of a motion to quash is no reason to abandon the adversarial process.  As VPR points out, *ex parte* motions for expedited discovery have been granted in similar cases in other districts; among the thousands of Does in those cases, relatively few motions to quash have been filed.  In at least one case, counsel[1] has sought leave to amend the complaint to add more Doe defendants. *See Lightspeed Media Corp. v. Does 1 - 100*, Case No. 1:10-cv-05604, d/e 16 (N.D. Ill.) (seeking leave to add Does 101 - 1000 as defendants).  In *Hard Drive Productions, Inc. v. Does 1 - 1000*, counsel sought leave to dismiss more than 100 Doe defendants, stating that some of the Does had "reached a mutually satisfactory resolution of their differences" with the plaintiff.  *Hard Drive*,

---

[1] VPR is represented by John Steele, Esq.  Steele represents other adult entertainment producers in cases now (or recently) pending in the Northern and Southern Districts of Illinois.

Case No. 1:10-cv-05606, d/e 33 (N.D. Ill.).[2]  Orin Kerr, a professor at George Washington University Law School, noted that whether you're guilty or not, "you look like a suspect."[3] Could expedited discovery be used to wrest quick settlements, even from people who have done nothing wrong?  The embarrassment of public exposure might be too great, the legal system too daunting and expensive, for some to ask whether VPR has competent evidence to prove its case.

In its order denying the motion for expedited discovery, the court noted that until at least one person is served, the court lacks personal jurisdiction over anyone. The court has no jurisdiction over any of the Does at this time; the imprimatur of this court will not be used to advance a "fishing expedition by means of a perversion of the purpose and intent" of class actions.  Order, d/e 9.

The motion to certify for interlocutory review [14] is denied.

Entered this 29th day of April, 2011.

**\s\Harold. A. Baker**

HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE

---

[2] In *Lightspeed*, only one defendant has been named and his case severed; the ISP subpoenas have been quashed, the other Does are dismissed, and Steele has been ordered to notify the Does that they are no longer potential defendants in the case. *See* Case No. 1:10-cv-05604, d/e 57 (N.D. Ill.).

[3] MSNBC article, p. 2.

3

CLOSED,REFER

# U.S. District Court
## CENTRAL DISTRICT OF ILLINOIS (Urbana)
### CIVIL DOCKET FOR CASE #: 2:11-cv-02068-HAB-DGB

VPR Internationale v Does 1-1017
Assigned to: Judge Harold A. Baker
Referred to: Magistrate Judge David G. Bernthal
Demand: $150,000
Cause: 17:101 Copyright Infringement

Date Filed: 03/08/2011
Date Terminated: 08/11/2011
Jury Demand: Plaintiff
Nature of Suit: 820 Copyright
Jurisdiction: Federal Question

**Plaintiff**

**VPR Internationale**

represented by **John L Steele**
STEELE HANSMEIER, PLLC
161 N. Clark Street
Suite 4700
Chicago, IL 60601
312-880-9160
Fax: 312-893-5677
Email: jlsteele@wefightpiracy.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Jerald J Bonifield**
BONIFIELD & ROSENSTENGEL, P.C.
16 E Main St
Belleville, IL 62220-1602
(618) 277-7740
Fax: (618) 277-7740
Email: jerryb1066@yahoo.com
*ATTORNEY TO BE NOTICED*

**Jon E Rosenstengel**
BONIFIELD & ROSENSTENGEL, P.C.
16 East Main St
Belleville, IL 62220-1620
(618) 277-7740
Fax: (618 277-5155
Email: jonrose@icss.net
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Does 1-1017**

Individually and as Representatives of a
class

**Amicus**

**Electronic Frontier Foundation**          represented by   **Charles Lee Mudd , Jr**
                                                              LAW OFFICES OF CHARLES LEE
                                                              MUDD JR PC
                                                              3344 N Albany Ave
                                                              Chicago, IL 60618
                                                              773-588-5410
                                                              Fax: 773-588-5440
                                                              Email: cmudd@muddlawoffices.com
                                                              *ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 03/08/2011 | 1 | CLASS ACTION COMPLAINT against Does 1-1017 ( Filing fee $ 350 receipt number 0753-1106890.), filed by VPR INTERNATIONALE. (Attachments: # 1 Exhibit A)(Steele, John) (Additional attachment(s) added on 3/8/2011: # 2 Civil Cover Sheet) (KM, ilcd). Modified on 3/8/2011 (KM, ilcd). (Entered: 03/08/2011) |
| 03/08/2011 | 2 | CERTIFICATE OF INTEREST pursuant to Local Rule 11.3 by VPR Internationale. (Steele, John) Modified on 3/8/2011 (KM, ilcd). (Entered: 03/08/2011) |
| 03/08/2011 | 3 | NOTICE of Appearance of Attorney by John L Steele on behalf of VPR Internationale (Steele, John) (Entered: 03/08/2011) |
| 03/08/2011 | 4 | NOTICE of Appearance of Attorney by John L Steele on behalf of VPR Internationale (Steele, John) Modified on 3/8/2011 pursuant to text order document is STRICKEN (KM, ilcd). (Entered: 03/08/2011) |
| 03/08/2011 | 5 | NOTICE of Appearance of Attorney by John L Steele on behalf of VPR Internationale (Steele, John) Modified on 3/8/2011 pursuant to text order document is STRICKEN (KM, ilcd). (Entered: 03/08/2011) |
| 03/08/2011 | 6 | Ex Parte MOTION to Expedite *Discovery* by Plaintiff VPR Internationale. Responses due by 3/25/2011 (Steele, John) (Entered: 03/08/2011) |
| 03/08/2011 | 7 | MEMORANDUM in Support re 6 Ex Parte MOTION to Expedite *Discovery* filed by Plaintiff VPR Internationale. (Attachments: # 1 Exhibit A)(Steele, John) (Entered: 03/08/2011) |
| 03/08/2011 | 8 | Proposed Pretrial Order by VPR Internationale. (Steele, John) (Entered: 03/08/2011) |
| 03/08/2011 |  | TEXT ORDER STRIKING/VACATING DOCUMENT Entered by Judge Harold A. Baker on 3/8/11: John Steele, Esq., has filed a notice of appearance of attorney for the other two attorneys whose names appear on the complaint. He cannot file a notice of appearance for other attorneys. The two notices of appearance for other attorneys 4 and 5 are stricken and must be refiled by the |

| | | |
|---|---|---|
| | | attorneys themselves. (KM, ilcd) (Entered: 03/08/2011) |
| 03/09/2011 | 9 | ORDER denying 6 Motion to Expedite Discovery entered by Judge Harold A. Baker on 3/9/11. See written Order. (KM, ilcd) (Entered: 03/09/2011) |
| 03/09/2011 | 10 | ORDER Entered by Judge Harold A. Baker on 3/9/11. Ex mero motu, in this case, the court directs the Clerk of the court to refuse to issue any subpoenas to plaintiff's counsel until further order of the court.(KW, ilcd) (Entered: 03/09/2011) |
| 03/09/2011 | 11 | NOTICE of Appearance of Attorney by Jerald J Bonifield on behalf of VPR Internationale (Bonifield, Jerald) (Entered: 03/09/2011) |
| 03/09/2011 | 12 | NOTICE of Appearance of Attorney by Jon E Rosenstengel on behalf of VPR Internationale (Rosenstengel, Jon) (Entered: 03/09/2011) |
| 03/11/2011 | 13 | Ex Parte MOTION for Reconsideration re 9 Order on Motion to Expedite by Plaintiff VPR Internationale. Responses due by 3/28/2011 (Attachments: # 1 Exhibit A)(Steele, John) (Entered: 03/11/2011) |
| 03/22/2011 | | TEXT ORDER entered by Judge Harold A. Baker on 3/22/11. The plaintiff has filed an ex parte motion for reconsideration of the Court's denial of the ex parte motion to expedite discovery. The Motion for Reconsideration 13 is denied. (KM, ilcd) (Entered: 03/22/2011) |
| 04/11/2011 | 14 | MOTION Certify Order by Plaintiff VPR Internationale. Responses due by 4/28/2011 (Steele, John) (Entered: 04/11/2011) |
| 04/29/2011 | 15 | ORDER denying 14 Plaintiff's Motion to Certify the Court's 3/9/11 Order for Interlocutory Review entered by Judge Harold A. Baker on 4/29/11. See written Order. (KM, ilcd) (Entered: 04/29/2011) |
| 06/03/2011 | 16 | USCA Notice of Docketing/Case Opening regarding Petition for Writ of Mandamus filed by VPR Internationale; Appellate Case 11-2257. Circuit Rule 3(b) included regarding filing fee. (KM, ilcd) (Entered: 06/06/2011) |
| 06/03/2011 | 17 | Petition for a Writ of Mandamus filed at USCA (11-2257) by VPR Internationale. (KM, ilcd) (Entered: 06/06/2011) |
| 06/10/2011 | 18 | NOTICE of USCA Order re 17 Petition for a Writ of Mandamus; the Petition is DENIED without prejudice. See written USCA Order. (KM, ilcd) (Entered: 06/10/2011) |
| 06/13/2011 | | TEXT ORDER entered by Judge Harold A. Baker on 6/13/11. Pursuant to the Seventh Circuit's Order 18 , VPR Internationale is ordered to file a brief on the propriety of pursuing this action on a class-wide basis. The brief shall be filed within 21 days of the date of this order ( Miscellaneous Deadline set of 7/5/2011). (KM, ilcd) (Entered: 06/13/2011) |
| 06/27/2011 | 19 | Amicus Curiae APPEARANCE entered by Charles Lee Mudd, Jr on behalf of Electronic Frontier Foundation. (Mudd, Charles) (Entered: 06/27/2011) |
| 06/27/2011 | 20 | MOTION for Leave to Appear as Amicus Curiae by Amicus Electronic Frontier Foundation. Responses due by 7/14/2011 (Mudd, Charles) (Entered: 06/27/2011) |

| 06/28/2011 |    | TEXT ORDER entered by Judge Harold A. Baker on 6/28/11. The Electronic Frontier Foundation has filed a motion for leave to appear as amicus curiae. The motion 20 is granted. The plaintiff's brief on the propriety of pursuing this action on a class-wide basis is to be filed on or before July 5, 2011. The Electronic Frontier may file an amicus curiae brief and supplemental documents thereto, no later than August 2, 2011. (KM, ilcd) (Entered: 06/28/2011) |
| 06/28/2011 |    | Set/Reset Deadlines/Hearings: Misc. deadline set for 7/5/11 for plaintiff's brief; Other Deadline set for 8/2/2011 for Electronic Frontier's amicus curiae brief. See Text Order dated 6/28/11. (KM, ilcd) (Entered: 06/28/2011) |
| 07/05/2011 | 21 | BRIEF *on the propriety of pursuing this action on a class-wide basis* by VPR Internationale. (Steele, John) (Entered: 07/05/2011) |
| 08/02/2011 | 22 | MOTION for Leave to File Excess Pages by Amicus Electronic Frontier Foundation. Responses due by 8/19/2011 (Attachments: # 1 Exhibit BRIEF OF AMICUS CURIAE ELECTRONIC FRONTIER FOUNDATION REGARDING PROCEEDING AS A CLASS ACTION)(Mudd, Charles) (Entered: 08/02/2011) |
| 08/02/2011 | 23 | NOTICE of Voluntary Dismissal by VPR Internationale. (Steele, John) (Entered: 08/02/2011) |
| 08/11/2011 |    | TEXT ORDER DISMISSING CASE entered by Judge Harold A. Baker on 8/11/11. The plaintiff has filed a notice of voluntary dismissal. This case is dismissed pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). (KM, ilcd) (Entered: 08/11/2011) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 05/17/2012 11:45:34 | | |
| PACER Login: | gb0314 | Client Code: | 109208 |
| Description: | Docket Report | Search Criteria: | 2:11-cv-02068-HAB-DGB |
| Billable Pages: | 3 | Cost: | 0.30 |

# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PACIFIC CENTURY INTERNATIONAL, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 1057 |
| | ) | |
| JOHN DOES 1-37, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

| | | |
|---|---|---|
| PACIFIC CENTURY INTERNATIONAL, LTD., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 1080 |
| | ) | |
| JOHN DOE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

| | | |
|---|---|---|
| FIRST TIME VIDEOS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 1083 |
| | ) | |
| JOHN DOE, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

| | | |
|---|---|---|
| FIRST TIME VIDEOS LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 12 C 1085 |
| | ) | |

-1-

JOHN DOE,                             )
                                         )
        Defendant.              )
_____)

HARD DRIVE PRODUCTIONS, INC,    )
                                         )
        Plaintiff,                )
                                         )
    v.                           )     No. 12 C 1086
                                         )
JOHN DOE,                             )
                                       )
        Defendant.              )
_____)

PACIFIC CENTURY INTERNATIONAL, LTD., )
                                         )
        Plaintiff,                )
                                       )
    v.                           )     No. 12 C 1088
                                         )
JOHN DOE,                             )
                                       )
        Defendant.              )
_____)

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

These six cases were consolidated for the purpose of this court ruling on a motion to compel that is based on nearly identical circumstances in each case. (Dkt. No. 9.)[1] The subpoenas, which arose during discovery in four separate underlying cases, two pending in the Eastern District of

_____

[1] All docket numbers refer to docket entries in the lead case, *Pacific Century International, Ltd. v. John Does 1-37*, No. 12 C 1057.

California, one in the Eastern District of Virginia, and one in the Southern District of Texas,[2] seek information from two internet service providers, Comcast Cable Communications, LLC ("Comcast") and Cequel III Communications II, LLC d/b/a Suddenlink Communications ("Suddenlink") (collectively "the ISPs"). (Dkt. No. 12, Ex. A.) The ISPs objected to the subpoenas (Dkt. No. 12, Ex. C), and the plaintiffs filed a motion to compel compliance (Dkt. No. 12). For the reasons stated below, the motion to compel is granted in part and denied in part. In addition, Comcast filed a motion to consolidate two additional cases with this case. (Dkt. No. 18.) That motion is denied without prejudice.

<u>BACKGROUND</u>

The plaintiffs in each of the six cases are producers of pornographic videos.[3] In each case, the plaintiffs allege that the John Doe defendants illegally reproduced and distributed a pornographic video in violation of the plaintiffs' copyright.[4] The defendants accessed the videos in each case from their computers through the use of a BitTorrent file sharing protocol. One other district court has previously explained that a Bit Torrent file sharing protocol is a decentralized method of distributing

---

[2] *Pac. Century Int'l, Ltd v. Unknown*, No. 11 C 3479 (E.D. Cal.); *Hard Drive Prods., Inc. v. Unknown*, No. 11 C 3476 (E.D. Cal.); *First Time Videos, LLC v. John Doe*, No. 11 C 690 (E.D. Va.); *Pac. Century Int'l Ltd v. Does 1-37*, No. 11 C 4430 (S.D. Tex.).

[3] The facts are drawn from the operative complaint in the four cases underlying the six subpoenas. *See* Amended Complaint [Dkt. No. 6], *Pac. Century Int'l, Ltd v. Unknown*, No. 11 C 3479 (E.D. Cal. Jan. 5, 2012); Amended Complaint [Dkt. No. 6], *Hard Drive Prods., Inc. v. Unknown*, No. 11 C 3476 (E.D. Cal. Jan. 5, 2012); Amended Complaint [Dkt. No. 3], *First Time Videos, LLC v. John Doe*, No. 11 C 690 (E.D. Va. Jan. 4, 2012); Complaint [Dkt. No. 1], *Pac. Century Int'l Ltd v. Does 1-37*, No. 11 C 4430 (S.D. Tex. Dec. 16, 2011).

[4] In *Pacific Century International Ltd v. Does 1-37*, No. 11 C 4430 (S.D. Tex.) and *Pacific Century International, Ltd v. Unknown*, No. 11 C 3479 (E.D. Cal.), the video at issue is entitled "Amateur Creampies - Laney Boggs." In *Hard Drive Productions, Inc. v. Unknown*, No. 11 C 3476 (E.D. Cal.), the video is entitled "Amateur Allure - Dylan." In *First Time Videos, LLC v. John Doe*, No. 11 C 690 (E.D. Va.), the video is entitled "FTV - Tiffany."

data on peer-to-peer ("P2P") file sharing networks:

> Since its release approximately 10 years ago, BitTorrent has allowed users to share files anonymously with other users. Instead of relying on a central server to distribute data directly to individual users, the BitTorrent protocol allows individual users to distribute data amo[ng] themselves by exchanging pieces of the file with each other to eventually obtain a whole copy of the file. When using the BitTorrent protocol, every user simultaneously receives information from and transfers information to one another. In the BitTorrent vernacular, individual downloaders/distributors of a particular file are called "peers." The group of peers involved in downloading/distributing a particular file is called a "swarm." A server which stores a list of peers in a swarm is called a "tracker." A computer program that implements the BitTorrent protocol is called a BitTorrent "client."

> The BitTorrent protocol operates as follows. First, a user locates a small "torrent" file. This file contains information about the files to be shared and about the tracker, the computer that coordinates the file distribution. Second, the user loads the torrent file into a BitTorrent client, which automatically attempts to connect to the tracker listed in the torrent file. Third, the tracker responds with a list of peers and the BitTorrent client connects to those peers to begin downloading data from and distributing data to the other peers in the swarm. When the download is complete, the BitTorrent client continues distributing data to the peers in the swarm until the user manually disconnects [from] the swarm or the BitTorrent client otherwise does the same.[5]

Because the BitTorrent system allows each individual user to share information anonymously, the plaintiffs do not know the identity of each alleged defendant at this time. Instead, the plaintiffs have identified only a series of Internet Protocol ("IP") addresses assigned to computers that accessed the copyrighted material, along with the date and time of each computer user's alleged unlawful activity. In each case, the plaintiffs filed a motion for early discovery seeking leave to subpoena the ISPs to obtain the identifying information for each IP address. The respective courts in each case granted plaintiffs leave to subpoena the ISPs, (Dkt. No. 12, Ex. B),

---

[5] *MCGIP, LLC v. Does 1–30*, No. 11 C 3680, 2011 WL 3501720, at *1 (N.D. Cal. Aug. 10, 2011) (quoting *Diabolic Video Prods., Inc. v. Does 1–2099*, No. 10 C 5865, 2011 WL 3100404, at *1 (N.D. Cal. May 31, 2011)).

and the plaintiffs issued Federal Rule of Civil Procedure 45 subpoenas to each ISP calling for production at the office of the plaintiffs' law firm in Chicago. (Dkt. No. 12, Ex. A.) Accordingly, the subpoenas were issued from this court, as required by Fed. R. Civ. P. 45(a)(2)(C) (requiring that the subpoena must issue "from the court for the district where the production . . . is to be made").

## LEGAL STANDARD

Under Rule 45(c)(3), the court must quash or modify a subpoena to a non-party witness that "subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv). When determining if a burden is undue, the court must ask whether "the burden of compliance with [the subpoena] would exceed the benefit of production of the material sought by it." *Nw. Mem'l Hosp. v. Ashcroft*, 362 F.3d 923, 927 (7th Cir. 2004). When making that inquiry, the court should consider "'the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.'" *Williams v. Blagojevich*, No. 05 C 4673, 2008 WL 68680, at *3 (N.D. Ill. Jan. 2, 2008) (quoting *Simon Prop. Grp. L.P. v. mySimon, Inc.*, 194 F.R.D. 639, 640 (S.D. Ind. 2000) (Hamilton, J.)). "The party opposing discovery has the burden of showing the discovery is overly broad, unduly burdensome, or not relevant." *Id.* (citation omitted).

## ANALYSIS

Copyright owners have used "John Doe" suits against unidentified defendants as a means of enforcing their copyrights in digital material for nearly a decade. *See* Ronald N. Weikers, *Data Security and Privacy Law* § 9:133 (rev. 2011).[6] Throughout the 2000s, for example, the music

---

[6] Prior to 2003, copyright owners primarily identified infringers by using a provision of the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512(h)(1), which allows copyright owners to issue subpoenas to ISPs to identify the IP addresses of alleged infringers even before

recording industry filed well over 10,000 John Doe lawsuits. *Id.* More recently, various movie

studios have adopted the tactic in an effort to identify copyright infringers. *See, e.g., Voltage

Pictures, LLC v. Does 1-5,000*, No. 10 C 873, 2011 WL 1807438, at *1 (D.D.C. May 12, 2011).

Producers of pornographic movies have been particularly aggressive on this front. The lawyers

representing the plaintiffs in these pending cases have to date filed at least 118 such lawsuits against

over 15,000 John Does in the last year and a half alone. *See* Decl. of Charles E. Piehl and Exhibit

A, *AF Holdings, LLC, v. Does 1-135*, No. 11 C 3336 (N.D. Cal. Feb. 22, 2012), ECF Nos. 43, 43-1

(providing a list of cases filed by plaintiffs' law firm as of February 24, 2012).

     Another court has described the common arc of the plaintiffs' litigating tactics in those cases:

> (1) a plaintiff sues anywhere from a few to thousands of Doe defendants for
> copyright infringement in one action; (2) the plaintiff seeks leave to take early
> discovery; (3) once the plaintiff obtains the identities of the IP subscribers through
> early discovery, it serves the subscribers with a settlement demand; (4) the
> subscribers, often embarrassed about the prospect of being named in a suit involving
> pornographic movies, settle. Thus, these mass copyright infringement cases have
> emerged as a strong tool for leveraging settlements—a tool whose efficiency is
> largely derived from the plaintiffs' success in avoiding the filing fees for multiple
> suits and gaining early access en masse to the identities of alleged infringers.

*MCGIP, LLC v. Doe*, No. 11 C 2331, 2011 WL 4352110, at *4 n.5 (N.D. Cal. Sept. 16, 2011). The

Doe defendants, of course, are not without recourse, as the ISPs often must notify them and give

them a chance to object to the subpoenas before the ISPs divulge their identity. *See* 47 U.S.C.

---

filing suit. *Id.* In 2003, the D.C. Circuit held that the DMCA's provision applied only when an ISP
"stor[es] the infringing material on its server" and not when an ISP acts "only as a conduit for data
transferred between two internet users, such as . . . sharing P2P files." *Recording Indus. Ass'n of
Am., Inc. v. Verizon Internet Servs., Inc.*, 351 F.3d 1229, 1233-35 (D.C. Cir. 2003); *accord In re
Charter Commc'ns, Inc., Subpoena Enforcement Matter*, 393 F.3d 771 (8th Cir. 2005); *Interscope
Records v. Does 1-7*, 494 F. Supp. 2d 388 (E.D. Va. 2007). The DMCA's provision thus became
inadequate for digital copyright owners attempting to identify users downloading copyrighted
material on P2P networks.

§ 551(c)(2)(B) (providing that ISPs who qualify as "cable providers" may not divulge personally

identifiable information of a subscriber in response to a court order unless "the subscriber is notified

of such order by the person to whom the order is directed").

Many Doe defendants have appeared in various actions, raising two arguments that the

subpoenas should be quashed. *See, e.g., First Time Videos, LLC v. Does 1-76*, 276 F.R.D. 254, 255

(N.D. Ill. Aug. 16, 2011). First, the Doe defendants who reside outside the judicial district in which

the action was brought contend that they are not subject to personal jurisdiction of the court. Second,

the Doe defendants contend that joinder of the defendants is improper under Federal Rule of Civil

Procedure 20(a)(2). Some courts have rejected those arguments,[7] but others have increasingly

accepted them and severed the defendants or quashed the subpoenas.[8]

In the face of this stiffening judicial headwind, the plaintiffs here have adopted a new tactic

to avoid the personal jurisdiction and joinder issues. In three of the underlying cases which prompted

---

[7] *See, e.g., First Time Videos*, 276 F.R.D. at 255 (Bucklo, J.) (holding that joinder is appropriate and the court has personal jurisdiction); *First Time Videos, LLC v. Does 1–500*, 276 F.R.D. 241, 251–52 (N.D. Ill. Aug. 9, 2011) (Castillo, J.) (denying motion to dismiss and motion to sever); *MGCIP v. Does 1–316*, No. 10 C 6677, 2011 WL 2292958 (N.D. Ill. June 9, 2011) (Kendall, J.) (denying motion to dismiss for lack of personal jurisdiction).

[8] *See, e.g., Millenium TGA v. Doe*, No. 10 C 5603, 2011 WL 7444064 (N.D. Ill. Sept. 26, 2011) (Manning, J.) (dismissing case for lack of personal jurisdiction and improper venue after previous order severing all other potential defendants); *On the Cheap, LLC. v. Does 1–5011*, No. 10 C 4472, 2011 WL 4018258 (N.D. Cal. Sept. 6, 2011) (severing defendants); *Digiprotect USA Corp. v. Does 1–266*, No. 10 C 8759, 2011 WL 1466073 (S.D.N.Y. Apr. 13, 2011) (denying discovery of the identities of defendants whom plaintiff had not shown to be subject to the court's jurisdiction); Order, *W. Coast Prods., Inc. v. Does, 1–2010,* No. 10 C 0093 (N.D.W.V. Dec. 16, 2010) (severing defendants and allowing amended complaints only against individuals with IP addresses in West Virginia); *CP Prods., Inc. v. Does 1–300*, No. 10 C 6255, 2011 WL 737761, at *1 (N.D. Ill. Feb. 24, 2011) (Shadur, J.) ("[T]here is no justification for dragging into an Illinois federal court, on a wholesale basis, a host of unnamed defendants over whom personal jurisdiction clearly does not exist and—more importantly—as to whom [plaintiff's] counsel could readily have ascertained that fact.").

the subpoenas at issue here, the plaintiffs have sued only a single defendant who is connected to an

IP address located in the district in which the plaintiffs brought suit, but are seeking in those single

defendant cases discovery about other IP addresses belonging to computer users who are not joined

as defendants.[9] In the remaining underlying case, the plaintiffs have sued thirty-seven defendants,

all of whom are connected to an IP address located in the jurisdiction in which the plaintiffs brought

suit, and are seeking discovery only about IP addresses belonging to people joined as defendants.[10]

The court will address the subpoenas with respect to each type of case in turn.

I.      Subpoenas Seeking Information about Non-Party IP Addresses: Cases 12 C 1080, 12 C
        1083, 12 C 1085, 12 C 1086, and 12 C 1088

        The ISPs contend that they "should not be subject to the burden—undue or otherwise—of

providing the requested information that ultimately will not even be useful in the Underlying

Actions." (Dkt. No. 13, at 6.) The court agrees that the identity of individuals connected with non-

party IP addresses is not relevant to the pending claims.

        Discovery is appropriate if the information sought is relevant, which means that it is

"reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1);

see also Williams, 2008 WL 68680, at *3 ("The scope of material obtainable by a Rule 45 subpoena

is as broad as permitted under the discovery rules. . . . (citations omitted)). The plaintiffs attempt to

---

        [9] Amended Complaint ¶ 6, *Pac. Century Int'l, Ltd v. Unknown*, No. 11 C 3479 (E.D. Cal. Jan.
5, 2012); Amended Complaint ¶ 6, *Hard Drive Prods., Inc. v. Unknown*, No. 11 C 3476 (E.D. Cal.
Jan. 5, 2012); Amended Complaint ¶ 6, *First Time Videos, LLC v. John Doe*, No. 11 C 690 (E.D.
Va. Jan. 4, 2012); *see also* (Pl.'s Reply 4-5 ("With respect to the [ISPs] joinder arguments, in three
of the underlying actions Plaintiff named only a single putative defendant. . . . It is axiomatic to say
that a single defendant cannot be misjoined with himself." (citations omitted))).

        [10] Complaint ¶ 6, *Pac. Century Int'l Ltd v. Does 1-37*, No. 11 C 4430 (S.D. Tex. Dec. 16,
2011).

justify the scope of the subpoenas in the single defendant cases by alleging in their complaints the

existence of additional IP addresses representing "co-conspirators" who conspired to infringe the

plaintiffs' copyright by downloading the same file through the BitTorrent system. The plaintiffs

have stated that, after discovery of the identity connected to each IP address, they intend "to seek

leave of the Court to amend this complaint to join John Doe's co-conspirators as defendants in this

action pursuant to Fed. R. Civ. P. 20(a)(2)."[11] The plaintiffs' contention, in essence, is that identities

of the non-parties associated with the IP addresses will be relevant to claims against future

defendants who have not yet been sued. By that device, the plaintiffs can avoid all personal

jurisdiction and joinder hurdles, and yet obtain the identifying information connected with hundreds

of IP addresses located all over the country through a single lawsuit.[12]

　　　To have relevance to the actions currently pending, however, the requested discovery must

bear on the civil conspiracy and copyright claims against the current John Doe defendants. In light

of the structure of the BitTorrent system, subpoenas seeking the identity of users of non-party IP

addresses are not reasonably calculated to lead to the discovery of evidence relevant to the pending

claims. BitTorrent users remain anonymous to other BitTorrent users, and have no connection to

---

[11] Amended Complaint ¶ 44, *Pac. Century Int'l, Ltd v. Unknown*, No. 11 C 3479 (E.D. Cal. Jan. 5, 2012); *accord* Amended Complaint ¶ 44, *Hard Drive Prods., Inc. v. Unknown*, No. 11 C 3476 (E.D. Cal. Jan. 5, 2012) (making an identical statement); Amended Complaint ¶ 43, *First Time Videos, LLC v. John Doe*, No. 11 C 690 (E.D. Va. Jan. 4, 2012) (same).

[12] Of course, bringing suit against the additional defendants may not be necessary, because the plaintiffs can use the identifying information to leverage a settlement before ever actually suing. *See Digiprotect USA Corp.*, 2011 WL 1466073, at *2 ("The court . . . remains concerned[] that defendants over whom the court has no personal jurisdiction will simply settle with plaintiff rather [than] undertake the time and expense required to assert their rights.").

them beyond the mere fact that they downloaded the same file.[13] It is therefore not a reasonable calculation that the individuals connected to the subpoenaed IP addresses will have any discoverable information related to the current defendants.

Moreover, it appears that the claims of civil conspiracy themselves are unfounded, because the plaintiffs have not pleaded the existence of an agreement among the alleged conspirators. *See Hard Drive Prods., Inc. v. Does 1-55*, No. 11 C 2798, 2011 WL 4889094, at *5 (N.D. Ill. Oct. 12, 2011) (Darrah, J.) ("Hard Drive's conspiracy claim fails because it has not pled the existence of an agreement among Does 1–55 to commit copyright infringement."). Additionally, based on what has been pleaded, it does not appear plausible that plaintiffs could plead the existence of a conspiracy. Consequently, the court finds that the complaints' allegations of civil conspiracy are only unjustified attempts to bolster the obtaining of irrelevant discovery about non-parties.

It is thus plain that the plaintiffs are not seeking information about the non-party IP addresses for the purpose of litigating their current claims. Instead, the plaintiffs intend to either sue the individuals whose identity they uncover or, more likely, to negotiate a settlement with those individuals. When evaluating relevancy, "a court is not required to blind itself to the purpose for which a party seeks information." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 353 (1978). Thus, "when the purpose of a discovery request is to gather information for use in proceedings other

---

[13] It is true that, assuming the BitTorrent users were accessing the network at the same time, they may have downloaded and uploaded pieces of the same file from each other's computers as part of the same swarm. *See MCGIP, LLC*, 2011 WL 3501720, at *1. Nonetheless, a BitTorrent user need not communicate with other users in any other way. *Id.* Indeed, a BitTorrent user will have no information about other users other than their IP addresses, the same information the plaintiffs already possess. *Id.*; *cf. Hard Drive Prods., Inc. v. Does 1-188*, 809 F. Supp. 2d 1150, 1163 (N.D. Cal. 2011) ("[E]ven if the IP addresses at issue . . . all came from a single swarm, there is no evidence to suggest that each of the addresses 'acted in concert' with all of the others.").

-10-

than the pending suit, discovery properly is denied." *Id.* That is precisely the situation here.

The court notes that denying discovery about non-party IP addresses will not leave the plaintiffs without a remedy to uncover the identity of these and other purported copyright infringers. The plaintiffs need merely sue each IP address in the district in which the address is located,[14] and then subpoena the ISPs for identifying information pertaining to that IP address. What the plaintiffs may not do, however, is improperly use court processes[15] by attempting to gain information about hundreds of IP addresses located all over the country in a single action, especially when many of those addresses fall outside of the court's jurisdiction. Accordingly, the motion to compel is denied with respect to the all of the subpoenas in which the plaintiffs are seeking the identity associated with non-party IP addresses.

II.     The Subpoena Seeking Information about a Defendant IP Address: Case 12 C 1057

The remaining subpoena, in *Pacific Century International, Ltd. v. John Does 1-37*, No. 12 C 1057, seeks the identity of only a single Doe defendant from Suddenlink. There are no relevancy concerns related to that subpoena, because the IP address about which the plaintiffs are seeking information is already a defendant. Moreover, the defendant IP address is subject to the personal jurisdiction of the Southern District of Texas, where the suit was brought. *See* Complaint ¶ 6, *Pac. Century Int'l Ltd v. Does 1-37*, No. 11 C 4430 (S.D. Tex. Dec. 16, 2011).

───────────────

[14] As the parties both indicate, it is possible to uncover the location of any IP address through the use of free online tools, such as http://ip-address-lookup-v4.

[15] In addition to the procedural improprieties outlined above, the plaintiffs' tactics deny the federal courts additional revenue from filing fees in the suits that should be filed to obtain the information the plaintiffs desire. *CP Prods.*, 2011 WL 737761, at *1 ("No predicate has been shown for thus combining 300 separate actions on the cheap—if CP had sued the 300 claimed infringers separately for their discrete infringements, the filing fees alone would have aggregated $105,000 rather than $350.").

The joinder issue is still relevant, however, because the underlying case was brought against thirty-seven Doe defendants. The ISPs cite several BitTorrent copyright cases in this district and elsewhere in which courts have severed all but one defendant after finding joinder of multiple Does improper. None of the cases is on point, however. Most of the cases addressed the joinder issue after one or more of the Doe defendants objected to the subpoena.[16] In the rest, the court severed the defendants when the plaintiff moved for expedited discovery, before any subpoenas had been issued or discovery approved.[17] None of the cases was decided following an objection to a subpoena by an ISP after discovery had already been authorized by the court hearing the underlying case.

The court recognizes the burden on ISPs caused by such subpoenas when joinder is potentially improper, particularly in cases in which the plaintiff seeks the identity of hundreds of Doe defendants. Even though any one subpoena may impose a relatively modest burden, over time the burden on the ISPs of multiple subpoenas may be substantial. *See* Decl. of Charles E. Piehl & Ex. A, *AF Holdings, LLC, v. Does 1-135*, No. 11 C 3336 (N.D. Cal. Feb. 22, 2012), ECF Nos. 43, 43-1 (noting that the plaintiffs' lawyers have subpoenaed information relating to 15,000 IP addresses in the last year and a half). Moreover, it is difficult for the ISPs to object before the approval of early

---

[16] *See* Written Opinion, *Millennium TGA, Inc. v. Does 1-100*, No. 10 C 5603 (N.D. Ill. Mar. 31, 2011) (Manning, J.); Minute Entry, *Future Blue, Inc. v. Does 1-300*, No. 10 C 6256 (N.D. Ill. June 8, 2011) (Conlon, J.); Written Opinion, *Lightspeed Media Corp. v. Does 1–100*, No. 10 C 5604 (N.D. Ill. Mar. 31, 2011) (Manning, J.); *see also Hard Drive Prods.*, 809 F. Supp. 2d at 1157; *LaFace Records, LLC v. Does 1-38*, No. 07 C 297, 2008 WL 544992 (E.D.N.C. Feb. 27, 2008).

[17] *Hard Drive Prods., Inc. v. Does 1-130*, No. 11 C 3826, 2011 U.S. Dist. LEXIS 132449 (N.D. Cal. Nov. 16, 2011); *Digital Sin, Inc. v. Doe*, No. 11 C 4397, 2011 U.S. Dist. LEXIS 128033 (N.D. Cal. Nov. 4, 2011); *Liberty Media Holdings, LLC v. BitTorrent Swarm*, 277 F.R.D. 669 (S.D. Fla. 2011); Order, *Boy Racer, Inc. v. Does 2-52*, No. 11-2834 (N.D. Cal.); *Pac. Century Int'l Ltd. v. Does 1-101*, No. 11 C 2533, 2011 WL 2690142 (N.D. Cal. July 8, 2011); *Diabolic Video Prods., Inc. v. Does 1-2099*, 2011 WL 3100404 (N.D. Cal. May 31, 2011); *Millennium TGA, Inc. v. Doe*, No. 11 C 2258, 2011 WL 1812786 (N.D. Cal. May 12, 2011).

discovery, given that they likely will not learn of such cases until they are served with a subpoena.

Nonetheless, the court will grant the motion to compel in Case 12 C 1057 for three reasons. First, this court is hesitant to make a ruling that could be interpreted as contrary to the earlier ruling of the Southern District of Texas, which approved early discovery, including the issuance of a subpoena to Suddenlink, despite the potential joinder issues. (Dkt. No. 2, Ex. B.) Second, the subpoena requires Suddenlink to contact the individual associated with the IP address and provide him or her an opportunity to object to the subpoena. (*Id.*) Accordingly, the Doe defendant will have the opportunity to object on the ground of improper joinder before his or her identity is provided in response to the subpoena. Third, the subpoena seeks the identity of only a single IP address out of the thirty-seven joined as defendants. In that situation, the burden on Suddenlink appears minimal, as compared to a situation in which the subpoena seeks information about many IP addresses.

The ISPs also raise one additional issue with respect to the subpoena in Case 12 C 1057. The ISPs contend that the subpoena should be quashed because the plaintiff in Case 12 C 1057 has not stated a prima facie case of copyright infringement. Under the Copyright Act, "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). Here, the plaintiff alleges that it has submitted a registration application, but the application has not yet been approved by the U.S. Copyright Office. *See* Complaint ¶ 25, *Pac. Century Int'l Ltd v. Does 1-37*, No. 11 C 4430 (S.D. Tex. Dec. 16, 2011).

Circuits are split over whether submitting an application satisfies § 411(a), even in the absence of approval of the application. *See Brooks-Ngwenya v. Indianapolis Pub. Schs.*, 564 F.3d 804, 806 (7th Cir. 2009). In the Fifth Circuit, where the underlying complaint was filed, merely

-13-

filing an application is sufficient. *See Apple Barrel Prods., Inc. v. R.D. Beard*, 730 F.2d 384, 386-87

(5th Cir. 1984); *see also Chi. Bd. of Educ. v. Substance, Inc.*, 354 F.3d 624, 631 (7th Cir. 2003)

("[A]n application for registration must be filed before the copyright can be sued upon."). Applying

the application approach, the plaintiff has sufficiently pleaded a claim of copyright infringement to

support enforcement of the subpoena.

Accordingly, the court will grant the motion to compel in Case 12 C 1057 only. Suddenlink

will have 70 days to comply with the subpoena from the date of this order, giving it time to comply

with its obligation to notify the subscriber whose identity was subpoenaed and to give him or her

an opportunity to object. (Dkt. No. 2, Ex. B.)

III.     Motion to Consolidate Two Additional Cases

Finally, Comcast has filed a motion to consolidate two additional cases with this case (Dkt.

No. 18 (seeking consolidation of *Pacific Century International, Ltd. v. Does 1-25*, No. 12 C 1535

(N.D. Ill) and *Hard Drive Productions, Inc. v. Does 1-54*, No. 12 C 1532 (N.D. Ill).) Both of those

cases originated in this district. Moreover, the court in both cases has granted the plaintiffs leave to

serve early discovery on the ISPs to obtain identifying information of IP addresses. No motion to

quash or motion to compel has yet been filed in either of the cases, however, so the motion to

consolidate is denied at this time. Should a motion to compel or a motion to quash be filed in those

cases, the court will entertain a motion to consolidate that motion only before this court, while

leaving the underlying actions assigned to the judges to whom they are currently assigned.

CONCLUSION

For the reasons listed above, the plaintiffs' motion to compel is granted in part and denied

in part. (Dkt. No. 12). The subpoenas in Cases 12 C 1080, 12 C 1083, 12 C 1085, 12 C 1086, and

-14-

12 C 1088 are quashed. Suddenlink shall comply with the subpoena in Case 12 C 1057 within 70 days of the date of this order. Comcast's motion to consolidate (Dkt. No. 18) is denied without prejudice.

ENTER:

*James F. Holderman*
JAMES F. HOLDERMAN
Chief Judge, United States District Court

Date: March 30, 2012

# EXHIBIT 5

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------X

IN RE: BITTORRENT ADULT FILM
COPYRIGHT INFRINGEMENT CASES

**ORDER &**
**REPORT & RECOMMENDATION**
Civil Action Nos.
11-3995(DRH)(GRB);
12-1147(JS)(GRB);
12-1150(LDW)(GRB); and
12-1154(ADS)(GRB)

-----------------------------------------------------------------X

**APPEARANCES:**

**K-Beech, Inc. v. John Does 1-37, CV 11-3995 (DRH)(GRB):**

For Plaintiff
Frederic R. Abramson, Esq.
160 Broadway, Suite 5000
New York, New York   10038

For Defendant John Doe #2
Joseph P. Augustine, Esq.
Augustine & Eberle LLP
90 Broad Street, Floor 25
New York, New York   10004

For Defendant John Doe #29
James Rosenzweig, Esq.
560 Fifth Avenue, 3rd Ave.
New York, New York   10036

For Defendant John Doe #35
James D. Murtha, Esq.
26 Railroad Ave. #351
Babylon, New York   11702

**Malibu Media, LLC v. John Does 1-26, CV 12-1147 (JS) (GRB),**
**Malibu Media, LLC v. John Does 1-11, CV 12-1150 (LDW) (GRB),**
**Patrick Collins, Inc. v. John Does 1-9, CV 12-1154 (ADS) (GRB):**

For Plaintiffs
Jason Aaron Kotzker
Kotzker Law Group
9609 S. University Blvd. #632134
Highlands Ranch, Colorado   80163

1

**GARY R. BROWN, United States Magistrate Judge:**

These actions are part of a nationwide blizzard of civil actions brought by purveyors of pornographic films alleging copyright infringement by individuals utilizing a computer protocol known as BitTorrent.   The putative defendants are identified only by Internet Protocol ("IP") addresses.   These four civil actions involve more than 80 John Doe defendants; these same plaintiffs have filed another nineteen cases in this district involving more than thrice that number of defendants.[1]   One media outlet reports that more than 220,000 individuals have been sued since mid-2010 in mass BitTorrent lawsuits, many of them based upon alleged downloading of pornographic works.[2]

This Order addresses (1) applications by plaintiffs in three of these actions for immediate discovery, consisting of Rule 45 subpoenas directed at non-party Internet Service Providers ("ISPs") to obtain identifying information about subscribers to the named IP addresses and (2) motions to quash similar subpoenas by several putative John Doe defendants in the remaining action.   For the reasons that follow, including evidence of abusive litigation tactics by plaintiffs, the plaintiffs' applications for service of subpoenas are granted only as to John Doe 1 in each case under terms and conditions set forth herein, and denied in all other respects.   The motions to quash are granted because the work in that action is not subject of a copyright registration.

Furthermore, it is respectfully recommended to the respective district judges that (1) as to

---

[1] See *Patrick Collins, Inc. v. Does 1-7*, CV 11-1270 (JG) (RER) (80 defendants in consolidated case); *K-Beech, Inc. v. Does 1-29*, CV 11-3331 (JFB) (ETB); *K-Beech, Inc. v. Does 1-37*, CV 11-3741 (LDW) (AKT); *K-Beech, Inc. v. Does 1-52*, CV 11-3994 (JFB) (ETB); *Patrick Collins, Inc. & K-Beech, Inc. v. Doe*, CV 11-4094 (JFB) (GRB); *Malibu Media, LLC v. Does 1-10*, CV 12-1146 (JS) (ETB); *Malibu Media, LLC v. Does 1-20*, CV 12-1148 (ADS) (AKT); *Malibu Media, LLC v. Does 1-30*, CV 12-1149 (LDW) (AKT); *Patrick Collins, Inc. v. Does 1-11*, CV 12-1153 (JFB) (ARL); *Malibu Media, LLC v. Does 1-13*, CV 12-1156 (JFB) (ETB).

[2] See http://www.usnews.com/news/articles/2012/02/02/porn-companies-file-mass-piracy-lawsuits-are-you-at-risk.

2

three of the actions, the matters be dismissed without prejudice as to all defendants other than John

Doe 1; (2) that the fourth action be dismissed without prejudice; and (3) that these plaintiffs and

their counsel be directed that all future actions be filed only against a single defendant.

## BACKGROUND

### 1. Allegations in the Complaints

The four complaints that are subject to this Order are nearly identical, though each involves

a different pornographic film, to wit: *Gang Bang Virgins, Veronica Wet Orgasm, Maryjane Young*

*Love* and *Gangbanged.   See K-Beech, Inc. v. Does 1-37*, CV 11-3995 (DRH)(GRB) (hereinafter

"*K-Beech*"); *Malibu Media LLC v. Does 1-26*, CV 12-1147(JS)(GRB) (hereinafter "*Malibu 26*");

*Malibu Media LLC v. Does 1-11*, CV 12-1150 (LDW)(GRB) (hereinafter "*Malibu 11*"); and

*Patrick Collins, Inc. v. Does 1-9*, CV 12-1154 (ADS)(GRB) (hereinafter "*Patrick Collins*").   In

three of the cases, plaintiff claims to be the owner of a copyright registered for the work in

question. *See, e.g., Malibu 26,* Complaint at ¶¶11-13, Docket Entry ("DE") [1].   In *K-Beech,*

plaintiff claims only that an application for copyright has been submitted as to its work *Gang Bang*

*Virgins*. *K-Beech,* Am. Compl. at ¶¶11-12, DE [18].   Each defendant is identified only by an IP

address purportedly corresponding to a physical address in this district, defined in the complaint as

"a number that is assigned by an ISP to devices, such as computers, that are connected to the

Internet." *Malibu 26,* Compl. at ¶8.   The Complaints further allege that "[t]he ISP to which

each Defendant subscribes can correlate the Defendant's IP address to the Defendant's true

identity." *Id.* at ¶9.

The complaints describe, in some detail, a peer-to-peer filing sharing protocol known as

BitTorrent which is a means by which devices connected to the Internet can share large computer

files (such as digital copies of movies) while minimizing the strain on computer networks.   *See,*

*e.g., Malibu 26,* Compl. at ¶¶14-15. BitTorrent works by breaking files into many smaller files "to reduce the load on the source computer, rather than downloading a file from a single source computer (one computer directly connected to another), [and] allows users to join a 'swarm' of host computers to download and upload from each other simultaneously (one computer connected to numerous computers)." *Id.* at ¶15. BitTorrent also uses a "tracker" computer that tracks the pieces of the files as those pieces are shared among various computers. This tracking feature the plaintiffs to identify the IP addresses from which the films were downloaded, the subscribers to which have become the defendants in these actions. *Id.* ¶¶24-26.

### 2. Plaintiffs' Motions for Early Discovery

Plaintiffs in *Malibu 26, Malibu 11, and Patrick Collins* have filed motions for leave to file non-party subpoenas prior to a Rule 26(f) conference, seeking to serve subpoenas upon the ISPs to identify the subscribers to the subject IP addresses. Specifically, these subpoenas seek the "true name, address, telephone number, e-mail address and Media Access Control ("MAC") address of the Defendant to whom the ISP issued an IP address." *See, e.g., Malibu 26,* Proposed Order, DE [3-2].

### 3. Motions to Quash

By order dated September 16, 2011, the Honorable A. Kathleen Tomlinson granted a nearly identical motion for early discovery in *K-Beech. See K-Beech,* Order of 9/16/11, DE [6]. However, to protect the rights of all parties, Magistrate Judge Tomlinson established a procedure by which both the ISPs and the John Does were afforded an opportunity to move to quash before the information was provided to K-Beech. The procedure Magistrate Tomlinson implemented elicited information that not only permits reasoned review of the motions to quash, but also provides insight into the pending motions for early discovery.

4

A total of six putative John Doe defendants moved to quash, *see K-Beech,* Motions, DE [7], [13], [14], [16], [17], & [34], while a seventh had counsel appear without filing a motion.   Several motions include fact based arguments which are highly individual to each moving party, as well as legal arguments.   One argument common to all of these motions arises from the fact that, according to the allegations, K-Beech does not have a registered copyright to *Gang Bang Virgins*, but premises its action on a copyright application.   K-Beech has amended its complaint to include trademark allegations, but, notably, has not alleged the receipt of a copyright registration.   As detailed below, the registration argument is a sufficient basis to grant the motions to quash, though not the sole basis.

### 4.  Additional Facts

#### a.  Factual Defenses Raised by the Moving John Doe Defendants

The factual defenses presented are vastly different and highly individualized.   One movant – John Doe #16 – has stated that he was at work at the time of the alleged download.   John Doe #2 states under oath that he closed the subject Earthlink account, which had been compromised by a hacker, before the alleged download.   *K-Beech,* Decl. of John Doe #2, ¶5, DE [34-1].   John Doe #29's counsel represents that his client is an octogenarian with neither the wherewithal nor the interest in using BitTorrent to download *Gang Bang Virgins*.   DE [13]. John Doe #10 represents that downloading a copy of this film is contrary to her "religious, moral, ethical and personal views." Mtn ¶5, DE [7].   Equally important, she notes that her wireless router was not secured and she lives near a municipal parking lot, thus providing access to countless neighbors and passersby.[3]   *Id.* at ¶4

---

[3] While Plaintiffs claim that they can amend their complaints to allege negligence against the owner of a WiFi router who failed to password-protect the device which was then used by an intruder to infringe its copyright, *see* K-Beech

### b. The Use of IP Address to Identify the Alleged Infringers

The complaints assert that the defendants – identified only by IP address – were the individuals who downloaded the subject "work" and participated in the BitTorrent swarm. However, the assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time.   An IP address provides only the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of telephones.   As one introductory guide states:

> If you only connect one computer to the Internet, that computer can use the address from your ISP.   Many homes today, though, use routers to share a single Internet connection between multiple computers.   Wireless routers have become especially popular in recent years, avoiding the need to run network cables between rooms.   If you use a router to share an Internet connection, the router gets the IP address issued directly from the ISP. Then, it creates and manages a subnet for all the computers connected to that router.[4]

Thus, it is no more likely that the subscriber to an IP address carried out a particular computer function – here the purported illegal downloading of a single pornographic film – than to say an individual who pays the telephone bill made a specific telephone call.

Indeed, due to the increasingly popularity of wireless routers, it much less likely.   While a decade ago, home wireless networks were nearly non-existent, 61% of US homes now have wireless access.[5]   Several of the ISPs at issue in this case provide a complimentary wireless router as part of Internet service.   As a result, a single IP address usually supports multiple computer

---

Mem. in Opp. at 24, DE [10], this assertion flies in the face of common sense.

4 See "What is an IP address?" available at http://computer.howstuffworks.com/internet/basics/question5492.htm.

5 Lardinois, F,. "Study: 61% of US Households Now Have WiFi," available at http://techcrunch.com, 4/5/12.

devices – which unlike traditional telephones can be operated simultaneously by different individuals.  *See U.S. v. Latham*, 2007 WL 4563459, at *4 (D.Nev. Dec. 18, 2007).   Different family members, or even visitors, could have performed the alleged downloads.   Unless the wireless router has been appropriately secured (and in some cases, even if it has been secured), neighbors or passersby could access the Internet using the IP address assigned to a particular subscriber and download the plaintiff's film.   As one court noted:

> In order to allow multiple computers to access the internet under the same IP address, the cable modem may be connected to a router, or may itself function as a router, which serves as a gateway through which multiple computers could access the internet at the same time under the same IP address. The router could be a wireless device in which case, computers located within 300 feet of the wireless router signal could access the internet through the router and modem under the same IP address. The wireless router signal strength could be increased beyond 600 feet if additional devices are added. The only way to prevent sharing of the wireless router is to encrypt the signal and even then an individual can bypass this security using publicly available software.

*Id.* at *4.   Some of these IP addresses could belong to businesses or entities which provide access to its employees, customers and sometimes (such as is common in libraries or coffee shops) members of the public.

These developments cast doubt on plaintiffs' assertions that "[t]he ISP to which each Defendant subscribes can correlate the Defendant's IP address to the Defendant's true identity." *see, e.g., Malibu 26,* Compl. at ¶9, or that the subscribers to the IP addresses listed were actually the individuals who carried out the complained of acts.   As one judge observed:

> The Court is concerned about the possibility that many of the names and addresses produced in response to Plaintiff's discovery request will not in fact be those of the individuals who downloaded "My Little Panties # 2." The risk is not purely speculative; **Plaintiff's counsel estimated that 30% of the names turned over by ISPs are not those of individuals who actually downloaded or shared**

> **copyrighted material.**   Counsel stated that the true offender is
> often the "teenaged son ... or the boyfriend if it's a lady."
> Alternatively, the perpetrator might turn out to be a neighbor in an
> apartment building that uses shared IP addresses or a dormitory that
> uses shared wireless networks.   This risk of false positives gives
> rise to the potential for coercing unjust settlements from innocent
> defendants such as individuals who want to avoid the
> embarrassment of having their names publicly associated with
> allegations of illegally downloading "My Little Panties # 2."

*Digital Sin, Inc. v. Does 1-176*, -- F.R.D. --, 2012 WL 263491, at *3 (S.D.N.Y. Jan. 30, 2012)

(citations omitted and emphasis added).   Another court noted:

> the ISP subscriber to whom a certain IP address was assigned may
> not be the same person who used the Internet connection for illicit
> purposes . . . By defining Doe Defendants as ISP subscribers who
> were assigned certain IP addresses, instead of the actual Internet
> users who allegedly engaged in infringing activity, Plaintiff's
> sought-after discovery has the potential to draw numerous innocent
> internet users into the litigation, placing a burden upon them that
> weighs against allowing the discovery as designed.

*SBO Pictures, Inc. v. Does 1-3036*, 2011 WL 6002620, at *3 (N.D.Cal. Nov. 30, 2011) (citations

omitted).

In sum, although the complaints state that IP addresses are assigned to "devices" and thus

by discovering the individual associated with that IP address will reveal "defendants' true

identity," this is unlikely to be the case.   Most, if not all, of the IP addresses will actually reflect a

wireless router or other networking device, meaning that while the ISPs will provide the name of

its subscriber, the alleged infringer could be the subscriber, a member of his or her family, an

employee, invitee, neighbor or interloper.

### c.  Indicia of Unfair Litigation Tactics

One moving defendant has provided concrete evidence of improper litigation tactics

employed by K-Beech.   In a sworn declaration, John Doe #16 states the following:

8

> Upon receipt of the Complaint, I reached out to Plaintiff and spoke
> to a self-described "Negotiator" in an effort to see if I could prove to
> them (without the need for publicly tying my name to the
> Complaint) that I had nothing to do with the alleged copyright
> infringements. **The Negotiator was offered unfettered access to
> my computer, my employment records, and any other discovery
> they may need to show that I was not the culpable party.** Instead,
> the Negotiator refused and was only willing to settle the Complaint
> for thousands of dollars. While the Negotiator said on October 24,
> 2011 that he would check to see if he could come down from the
> thousands of dollar settlement amount, the Negotiator has not
> responded to two voice mails that were left on October 25, 2011.
> Notably, the Negotiator justified the settlement amount because, in
> part, I would incur legal fees in hiring an attorney.

*K-Beech*, Decl. of John Doe #16, at 11-12 , DE [16] (emphasis added).   Significantly, since

plaintiff has not yet been provided with the identities of the moving John Does, this record exists

only because John Doe #16 proactively contacted counsel for K-Beech (who is also representing

Patrick Collins, Inc. in another matter), rather than await a determination by the Court.   John Doe

#16's experience directly mirrors that of defendants in a separate action by plaintiff K-Beech

regarding *Gang Bang Virgins*, as well as another action filed by Patrick Collins, Inc. relating to a

film entitled *Cuties*.  See *K-Beech, Inc. v. Does 1-85*, 2011 U.S. Dist. LEXIS 124581, at *6

(E.D.Va. Oct. 5, 2011) ("Some defendants have indicated that the plaintiff has contacted them

directly with harassing telephone calls, demanding $2,900 in compensation to end the litigation")

and *Patrick Collins, Inc. v. Does 1-58*, 2011 U.S. Dist. LEXIS 120235, at *6 (E.D.Va. Oct. 5,

2011) (same); *cf. Raw Films, Ltd. v. Does 1-32*, 2011 WL 6182025, at *2 (E.D.Va. Oct. 5,

2011)(same).[6]

Remarkably, plaintiff's opposition to John Doe #16's motion, encompassing 62 pages of

---

[6] In these cases, counsel for K-Beech and Patrick Collins, Inc. was directed to show cause why Rule 11 sanctions
should not be imposed for this conduct, but ultimately sanctions were not imposed.

material,[7] does not provide any evidentiary response to these sworn assertions of improper

conduct.   Rather, counsel attempts to dismiss this evidence as "mere denials", and unabashedly

argues that "[d]efendant's] assertion that the negotiations between him and Plaintiff have ended

further supports the need for litigation."   Pl's. Mem. In Opp. at 24, DE [22].   Moreover, K-Beech

has filed "Notices of Settlement and Voluntary Dismissal" as to three of the John Does in this

action.   *See* DE [30], [31] and [38].   "This course of conduct indicates that the plaintiffs have

used the offices of the Court as an inexpensive means to gain the Doe defendants' personal

information and coerce payment from them. The plaintiffs seemingly have no interest in actually

litigating the cases, but rather simply have used the Court and its subpoena powers to obtain

sufficient information to shake down the John Does."   *Raw Films*, 2011 WL 6182025, at *2.

In a similar case by plaintiff Patrick Collins filed in this district, after being granted

discovery of the IP subscribers, counsel for that entity described in motion papers the intended

approach to the John Doe defendants:

> Plaintiff requested and was granted additional time within which to
> effectuate service upon the Doe Defendants to accommodate
> Plaintiff's need for obtaining their identifying information, as well
> as its further settlement and litigation strategy. The latter involves
> Plaintiff contacting Doe Defendants once their identities are known
> and attempting to reach a settlement with them.   In cases where a
> settlement cannot be reached, Plaintiff would then consider the
> feasibility of filing suit, and proceed with service upon those Doe
> Defendants against whom it chooses to proceed.

---

[7] Plaintiff K-Beech's rambling motion papers often lapse into the farcical.   In its papers, counsel for K-Beech equate its difficulties with alleged piracy of its adult films with those faced by the producers of the Harry Potter books, Beatles songs and Microsoft software, and compare its efforts to collect from alleged infringers of its rights to the efforts of the FBI to combat child pornography.   Mem. in Opp. at 4, 10, DE [22].   In an ironic turn, the purveyors of such works as *Gang Bang Virgins*, explain how its efforts in this matter will help empower parents to prevent minors from watching "movies that are not age appropriate" by ensuring that viewers must pay for plaintiffs products, and thereby effectively notify parents of such activity because "many parents would surely notice if they showed up on billing statements."   *Id.* at 7-8.   It is difficult to accord the plaintiff, which features "Teen" pornography on its website, the moral high-ground in this regard.

10

*Patrick Collins, Inc. v. Does 1-7,* CV 11-1270 (JG)(RER), Mtn, DE [22], at ¶ 6.   On a cold record,

this overview could be viewed as a reasoned approach.   However, when viewed against

undisputed experience of John Doe #16, described above, and findings by other courts, this

suggests an approach that is highly inappropriate.

## DISCUSSION

### The Legal Standard

Federal Rule of Civil Procedure 26(d)(1) forbids a party from seeking discovery "from any

source before the parties have conferred as required by Rule 26(f) except as "authorized ... by court

order." Fed. R. Civ. P. 26(d) (1).   This is generally viewed as requiring a showing of good

cause. *See, e.g., Ayyash v. Bank Al–Madina,* 233 F.R.D. 325, 326 (S.D.N.Y. 2005).   Plaintiffs

rely principally upon the five factor *Sony Music* test, adopted by the Second Circuit, which

requires the Court to weigh:

> (1) [the] concrete[ness of the plaintiff's] showing of a prima facie
> claim of actionable harm, ... (2) [the] specificity of the discovery
> request, ... (3) the absence of alternative means to obtain the
> subpoenaed information, ... (4) [the] need for the subpoenaed
> information to advance the claim, ... and (5) the [objecting] party's
> expectation of privacy.

*Arista Records, LLC v. Doe 3,* 604 F.3d 110, 119 (2d Cir. 2010) (*citing Sony Music Entm't Inc. v.*

*Does 1–40,* 326 F. Supp. 2d 556, 564–65 (S.D.N.Y. 2004)).   This test, articulated in the context of

evaluating a motion to quash, frames the inquiry in evaluating defendants' motions in *K-Beech.*

Additionally, plaintiffs correctly note that the test is also instructive in evaluating the motions for

early discovery.

### Element 1: Prima Facie Claim of Actionable Harm

Plaintiffs Malibu and Patrick Collins have set forth *prima facie* claims of actionable harm

by alleging ownership of registered, copyrighted works that have been infringed.[8]

The situation with K-Beech is far different.   K-Beech does not allege that it has a copyright registration; rather, it bases its complaint on a copyright application.   In another case in this district, *K-Beech v. Does 1-29*, CV 11-3331, Magistrate Judge Boyle denied K-Beech the precise relief sought in the instant application based on a failure to allege that its copyright in the work in that case – *Virgins 4* – had been registered.   Judge Boyle found:

> Section 411(a) of the Copyright Act "requires copyright holders to register their works before suing for copyright infringement." *Reed Elsevier, Inc. v. Muchnick*, — U.S. —, 130 S. Ct. 1237, 1241, 176 L. Ed. 2d 18 (2010) (citing 17 U.S.C.A. § 411(a)). While failure to register a work does not deprive a federal court of jurisdiction over an action for infringement, valid registration is an element of an infringement claim. Although the Second Circuit has not addressed this specific question, courts in both the Eastern District of New York and the Southern District of New York have held that submission of an application for copyright registration does not satisfy the registration precondition of § 411(a).

Order of 9/19/11 at 2-3 (additional quotations and citations omitted), DE [10].   Judge Boyle denied the requested discovery, and K-Beech voluntarily dismissed the case. *See* DE [12].   I agree with Judge Boyle and find that K-Beech has not met its burden on this factor.

K-Beech attempted to remedy this deficiency by adding conclusory trademark claims to its amended complaint.   The complaint fails to explain in what ways the illegal downloading and uploading alleged could possibly cause confusion among consumers, or "hamper efforts by

---

[8] For the purposes of this analysis, it is assumed that plaintiffs' works are entitled to copyright protection, though this may be an open question.   *See Liberty Media Holdings, LLC v. Swarm Sharing Hash File*, 821 F. Supp. 2d 444, 447 n.2 (D.Mass. 2011) (it is "unsettled in many circuits, whether pornography is in fact entitled to protection against copyright infringement").

Plaintiff to protect its reputation" with "the purchasing public in New York."[9]  Am. Compl.

¶¶64-67, DE [18].    K-Beech's citation to *dicta* in the Supreme Court's decision in *Dastar* is

unavailing, as that case's holding undercuts plaintiff's attempt to extend trademark protection to

these facts.  *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34 (2003) ("in

construing the Lanham Act, we have been careful to caution against misuse or over-extension of

trademark and related protections into areas traditionally occupied by copyright" (citation

omitted)).   Even viewed in the most favorable light, the trademark allegations fail to state a claim.

### Elements 2: The Specificity of the Discovery Requests

With respect to the specificity of discovery requests, the *Sony Music* court explained that

this factor requires that "Plaintiffs' discovery request is also sufficiently specific to establish a

reasonable likelihood that the discovery request would lead to identifying information that would

make possible service upon particular defendants who could be sued in federal court."  *Sony*

*Music*, 326 F. Supp. 2d at 566.   While the discovery propounded by plaintiffs is specific, for the

reasons discussed above, it does not establish a reasonable likelihood it will lead to the identity of

defendants who could be sued. *See Pacific Century Int'l Ltd. v. Does*, 2011 WL 5117424, at *2

(N.D.Cal. Oct. 27, 2011) ("Plaintiff must go beyond the 'limited discovery' that it earlier asserted

would lead to Defendants' identities . . . [p]resumably, every desktop, laptop, smartphone, and

tablet in the subscriber's residence, and perhaps any residence of any neighbor, houseguest or other

---

[9] As K-Beech put its reputation into issue, it is worth noting that the owner of K-Beech Inc. (and the apparent inspiration for the K-Beech mark) is Kevin Beechum.  *See* "Porn studios raided to ensure adult-only casts," 1/12/07, *LA Times* at 1.  It appears that this is the same Kevin Beechum who testified in federal prosecutions about his experience vandalizing retail adult video stores to help extort protection payments from their owners.  *See U.S. v. Feinberg*, 89 F.3d 333, 335 (7th Cir. 1996); *U.S. v. Sturman*, 49 F.3d 1275, 1278 (7th Cir. 1995).  In those cases, Beechum described how he hired associates to use hammers and baseball bats to inflict $10,000 in damage on a Phoenix adult shop, and negotiated over a "few more jobs" in Cleveland.   Other evidence established that, following Beechum's introduction, these same associates, on behalf of the extortionists, planned to plant remote control bombs at eight stores in Chicago in furtherance of the scheme, but that plan failed when, after successfully attacking one store, a bomb accidentally went off, killing one of the coconspirators.

sharing his internet access, would be fair game.   Beyond such an inspection, [the plaintiff] might

require still more discovery, including interrogatories, document requests and even depositions."

(citations omitted; alterations in original)).

In this regard, the instant matter is factually distinguishable from the *Arista Records*

decision.   In that case, the sought after discovery involved an Internet service provider located at a

university.   Based on that setting, and at that time, it was almost certain that the end user at an IP

address was a particular individual, rather than a wireless network.   The instant case involves

broadband Internet service in a largely residential suburban area at a time when wireless is widely

available.   Furthermore, it is alleged that each John Doe in the instant case downloaded only a

single pornographic film.   By contrast, in *Arista Records*, the plaintiff alleged that a file sharing

folder located at the IP address in question contained 236 audio files, containing at least a

half-dozen copyrighted songs owned by the plaintiff.   *Arista Records,* 604 F.3d at 122.   In fact,

in that case, plaintiffs' investigator was able to "download[] music files from the user's computer,"

which is not the case here.   *Arista Records LLC v. Does 1-16,* 2009 WL 414060, at *1 (N.D.N.Y.

Feb. 18, 2009) *aff'd* 604 F.3d 110 (2d Cir. 2010).   Clearly, the level of activity in *Arista Records*

made it far more likely that the subscriber to the IP address would have conducted or at least been

aware of the illegal downloading.   In sum, it is not clear that plaintiffs have satisfied this factor.

**Element 3: The Absence of Alternative Means**

As one court observed, "[b]ecause the transactions in question occurred online, the

defendants have been elusive and the IP addresses and ISP are the only available identifying

information.   Without the requested discovery, there are no other measures Plaintiff can take to

identify the personal information for the Doe defendants."   *Raw Films, Ltd. v. Does 1-11,* 2012

WL 684763, at *2 (S.D. Cal. Mar. 2, 2012).   Plaintiffs retained a company that provides forensic

14

Case 2:12-cv-01147-JS-GRB  Document 4  Filed 05/01/12  Page 15 of 20  PageID #: ...

Case: 1:12-cv-03538 Document #: 18-3 Filed: 06/07/12 Page 58 of 90 PageID #:133

investigation services including the identification of IP addresses using BitTorrent protocol. *See* Fieser Decl. ¶¶5-6, DE [3-3]. Since plaintiffs have only been able to identify IP addresses used for potential infringement, they have established to the satisfaction of the Court that there are not alternative means available to identify the alleged infringers.

**Element 4: The Need for Subpoenaed Information to Advance the Claim**

Plaintiffs clearly need identification of the putative John Does in order to serve process on them and prosecute their claims. However, not all the information sought is required to advance the claim. For example, in addition to names and addresses, plaintiffs seek both the home telephone numbers and email addresses of the putative John Does, *see Malibu 26,* Proposed Order DE [3-2], information which is clearly not required to proceed with this action. In particular, obtaining the home telephone numbers seems calculated to further plaintiffs' settlement strategies, discussed above, rather than advancing their claims by allowing them to effect service.

**Element 5: Defendants' Expectation of Privacy**

In *Arista Records*, the John Doe defendant, conceding that he had engaged in the alleged improper downloading, sought to quash the subpoena on First Amendment grounds. While recognizing the protected nature of anonymous speech, the Court rejected the challenge, concluding that the "First Amendment does not . . . provide a license for copyright infringement." *Arista Records,* 604 F.3d at 118. In examining this factor, the *Sony Music* court noted "defendants have little expectation of privacy in downloading and distributing copyrighted songs without permission." *Sony Music,* 326 F. Supp. 2d at 566-67. Here it is uncertain – indeed, it may be unlikely – that the subscribers sought to be identified downloaded the plaintiffs' copyrighted works. *Cf. Pacific Century,* 2011 WL 5117424, at *2 (denying discovery to protect "innocent internet users"). Thus, this Court cannot conclude with any reasonable certainty that

15

plaintiffs have overcome the expectation of privacy by putative defendants.

**Abusive Litigation Tactics Employed by the Plaintiffs**

The most persuasive argument against permitting plaintiffs to proceed with early discovery arises from the clear indicia, both in this case and in related matters, that plaintiffs have employed abusive litigations tactics to extract settlements from John Doe defendants.   Indeed, this may be the principal purpose of these actions, and these tactics distinguish these plaintiffs from other copyright holders with whom they repeatedly compare themselves.   *See, e.g., K-Beech*, Pl. Mem. in Opp. at 3, DE [22] (arguing that this decision "will affect the rights of intellectual property holders across all segments of society").   While not formally one of the *Sony Music* factors, these facts could be viewed as a heightened basis for protecting the privacy of the putative defendants, or simply grounds to deny the requested discovery on the basis of fundamental fairness.

In an effort to defend its litigation approach, K-Beech argues that "Fed.R.Civ.P. 1 requires that Courts construe the rules to secure the inexpensive determination of every action." Pl. Mem. in Opp. at 11, DE [22].   This Court takes the mandate of Rule 1 quite seriously, and vigorously encourages efforts by litigants to reduce litigation costs through settlement.   *See In re Tobacco Litig.,* 192 F.R.D. 90, 95 (E.D.N.Y. 2000) (describing court's "duty to take affirmative action assisting the parties in all possible settlement options").   However, in its argument, plaintiff neglects to observe that Rule 1 requires that disputes should be resolved in a manner that is "**just, speedy and inexpensive**." Fed. R. Civ. P. 1 (emphasis added).   In this case, John Doe #16 offered the plaintiff "unfettered access" to his computer and employment records demonstrating that he was not at home at the time of the downloading, yet still finds himself pressured to settle for thousands of dollars.   It would be difficult to characterize such a resolution as "just" even if speedy and inexpensive (for the plaintiff).   *Cf. On The Cheap, LLC v. Does 1-5011*, -- F.R.D. --,

16

2011 WL 4018258, at *4 (N.D.Cal. Sept. 6, 2011) ("plaintiff's desire to enforce its copyright in what it asserts is a cost-effective manner does not justify perverting the joinder rules to first create . . . management and logistical problems . . . and then offer to settle with Doe defendants so that they can avoid digging themselves out of the morass plaintiff is creating").

Our federal court system provides litigants with some of the finest tools available to assist in resolving disputes; the courts should not, however, permit those tools to be used as a bludgeon. As one court advised Patrick Collins Inc. in an earlier case, "while the courts favor settlements, filing one mass action in order to identify hundreds of doe defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for." *Patrick Collins, Inc. v. Does 1–3757*, 2011 U.S. Dist. LEXIS 128029, at *6–7 (N.D.Cal. Nov. 4, 2011).

Given the unopposed, sworn account by John Doe #16, which dovetails with the experience of defendants in other actions brought by K-Beech and Patrick Collins, I find counsel for K-Beech has already engaged in improper litigation tactics in this matter, and find it highly probable that Patrick Collins Inc. and Malibu will likely engage in similar tactics if permitted to proceed with these mass litigations. Such conduct cannot be condoned by this Court. This is a persuasive basis to deny the motions for early discovery, as well as an additional basis to grant the motions to quash. *See Pacific Century* , 2011 WL 5117424, at *2 (denying discovery on this basis).

It would be unrealistic to ignore the nature of plaintiffs' allegations – to wit: the theft of pornographic films – which distinguish these cases from garden variety copyright actions. Concern with being publicly charged with downloading pornographic films is, understandably, a common theme among the moving defendants. As one woman noted in *K-Beech*, "having my

17

name or identifying or personal information further associated with the work is embarrassing,

damaging to my reputation in the community at large and in my religious community." Mtn to

Quash, ¶5, DE [7]. Many courts evaluating similar cases have shared this concern. *See,e.g.,*

*Pacific Century Int'l, Ltd. v. Does 1-37,* – F. Supp. 2d –, 2012 WL 1072312, at *3 (N.D. Ill. Mar.

30, 2012) ("the subscribers, often embarrassed about the prospect of being named in a suit

involving pornographic movies, settle"); *Digital Sin,* 2012 WL 263491, at *3 ("This concern, and

its potential impact on social and economic relationships, could compel a defendant entirely

innocent of the alleged conduct to enter an extortionate settlement") *SBO Pictures,* 2011 WL

6002620, at *3 (defendants "whether guilty of copyright infringement or not-would then have to

decide whether to pay money to retain legal assistance to fight the claim that he or she illegally

downloaded sexually explicit materials, or pay the money demanded. This creates great potential

for a coercive and unjust 'settlement'" ). This consideration is not present in infringement

actions involving, for example, popular music downloads. *See Arista Records,* 604 F.3d at 122,

("Teenagers and young adults who have access to the Internet like to swap computer files

containing popular music . . . The swappers . . . are ignorant or more commonly disdainful of

copyright." (*quoting In re Aimster Copyright Litig.*, 334 F.3d 643, 645 (7th Cir. 2003))).

The Federal Rules direct the Court to deny discovery "to protect a party or person from

annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

This situation cries out for such relief.

**Joinder is Inappropriate**

In opposing the motions to quash, K-Beech relies heavily on the "swarm joinder" theory

championed by plaintiffs here and elsewhere. Rule 20 governs the permissive joinder of parties

and states that defendants may be joined in one action where a plaintiff states a right to relief

18

"arising out of the same transaction, occurrence, or series of transactions or occurrences" and "any question of law or fact common to all defendants will arise in the action."   Fed. R. Civ. P. 20 (a) (2) (A) & (B).   The argument is that every user who participates in the "swarm" is acting in concert to violate plaintiffs' copyrights.

Highly questionable factual assumptions underlie plaintiffs' contention that these cases satisfy the Rule 20 requisites for joinder.   By way of example, Plaintiffs assert that the John Does were "acting in concert with each other," "working together", and "directly interacted and communicated with other members of that swarm."   *See, e.g., Malibu 26,* Compl. ¶¶ 10, 33, 34. Much of the BitTorrent protocol operates invisibly to the user – after downloading a file, subsequent uploading takes place automatically if the user fails to close the program.   Exhibit D to the complaints, which allegedly documents the "interactions" between defendants, is a page of machine instructions which clearly demonstrate that the user plays no role in these interactions. Indeed, "[t]he bare fact that Doe clicked on a command to participate in the BitTorrent Protocol does not mean that they were part of the downloading by unknown hundreds or thousands of individuals across the country or across the world."   *Hard Drive Prods., Inc. v. Does 1-188,* 809 F. Supp. 2d 1150, 1163 (N.D. Cal. 2011).

Moreover, the dates of downloading provided in the complaints – which are often weeks or months apart -- further undermine the allegation that all of the John Does were part of a single swarm.   Thus, *even assuming that the John Does are the actual infringers*, the assertion that defendants were acting in concert rests upon a thin reed.   *See generally Raw Films, Ltd. v. Does 1-32,* 2011 WL 6840590, at *2 (N.D.Ga. Dec. 29, 2011) (stating that the "differing dates and times of each Defendant's alleged sharing do not allow for an inference that the Defendants were acting in concert"); *Raw Films, Ltd. v. Does 1-32,* 2011 WL 6182025 at *2 (E.D.Va. 2011) (conduct over

19

a three month time span was "insufficient to meet the standards of joinder set forth in Rule 20"). I find that plaintiffs have not satisfied the requirement of establishing that defendants participated in the same "transaction" or "occurrence" within the meaning of Rule 20.

Alternatively, because joinder is permissive, this Court retains the discretion to sever under Rules 20(b), 21, and 42 (b). *See Third Degree Films v. Does 1-131*, -- F. Supp. 2d --, 2012 WL 692993, at *3 (D. Ariz. Mar. 1, 2012). In determining whether to exercise that discretion, the court should "examine whether permissive joinder would comport with the principles of fundamental fairness or would result in prejudice to either side." *On the Cheap*, 2011 WL 4018258, at *2 (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000)). "Courts may also consider factors such as the motives of the party seeking joinder and whether joinder would confuse and complicate the issues for the parties involved." *SBO Pictures*, 2011 WL 6002620, at *3.

Plaintiffs identify two common questions of fact in these actions: the plaintiffs' ownership of copyrights, and the workings of BitTorrent. By contrast, the half-dozen moving defendants, even at this preliminary stage, have raised a panoply of individual defenses, including age, religious convictions, and technological savvy; misidentification of ISP accounts; the kinds of WiFi equipment and security software utilized; and the location of defendant's router. The individualized determinations required far outweigh the common questions in terms of discovery, evidence, and effort required. Thus, swarm joinder complicates these actions, resulting in waste of judicial resources.

Plaintiffs tout the fact that "joinder in BitTorrent copyright infringement cases has been thoroughly analyzed in forty reported opinions and has been permitted in district courts across the country." *K-Beech*, Mem. in Opp. at 1, DE [25]. However, due to plaintiffs' litigation

strategy, which includes avoiding review on the merits except at a preliminary, *ex parte* stage, these determinations were made without any factual record by judges unaware of the highly individualized, fact specific defenses raised on the motions to quash, or evidence of strong-arm tactics, both of which strongly militate against allowing joinder in these mass actions.

On this issue, one court has observed:

> In addition to the Rule 20(a)(2) criteria, the court has a parallel duty to ensure that permissive joinder "would comport with the principles of fundamental fairness or would [not] result in prejudice to either side. The court also has discretion to sever an action when joinder would confuse and complicate the issues for all parties involved. It is likely that Defendants would assert different factual and legal defenses, and would identify different witnesses. Case management and trial . . . would be inefficient, chaotic, and expensive. Joining Defendants to resolve what at least superficially appears to be a relatively straightforward case would in fact transform it into a cumbersome procedural albatross. These difficulties would place tremendous burden on Defendants as well. To provide two illustrative examples, each Defendant would have the right to be present at every other Defendant's depositions—a thoroughly unmanageable and expensive ordeal. Similarly, *pro se* Defendants, who most likely would not e-file, would be required to serve every other Defendant with a copy of their pleadings and other submissions throughout the pendency of the action at substantial cost. The court cannot permit a case to proceed in this manner.

*Pacific Century,* 2011 WL 5117424, at *3 (quotations and citations omitted). As such, I find that principles of fundamental fairness and judicial economy dictate that permissive joinder not be allowed in these cases.

**By Pursuing Mass Actions, Plaintiffs Improperly Avoid Payment of Filing Fees**

The payment of court filing fees is mandated by statute. Specifically, the "district court shall require the parties instituting any civil action, suit or proceeding in such court, whether by original process, removal or otherwise, to pay a filing fee of $350." 28 U.S.C. §1914(a). Of that

amount, "$190 shall be deposited into a special fund of the Treasury to be available to offset funds

appropriated for the operation and maintenance of the courts of the United States." 28 U.S.C.

§1931(1).

In multidistrict cases considering severance of cases, courts have noted that the filing fee

has:

> two salutory purposes.   First, it is a revenue raising measure. . .
> Second, §1914(a) acts as a threshold barrier, albeit a modest one,
> against the filing of frivolous or otherwise meritless lawsuits.   Had
> each plaintiff initially instituted a separate lawsuit as should have
> occurred here, a fee would have been collected for each one. . . .
> Thus, the federal fisc and more particularly the federal courts are
> being wrongfully deprived of their due.   By misjoining claims, a
> lawyer or party need not balance the payment of the filing fee
> against the merits of the claim or claims.

*In re Diet Drugs*, 325 F. Supp. 2d 540, 541-42 (E.D. Pa. 2004); *see also In re Seroquel Prods.*

*Liability Litig.*, 2007 WL 737589, at *2-3 (M.D. Fla. Mar. 7, 2007) (denying reduction of filing

fees, noting the burden on the court and the "gatekeeping feature of a filing fee").

Several courts in similar cases involving BitTorrent protocol have also recognized the

effect of a countenancing a single filing fee.   One court described the "common arc of the

plaintiffs' litigating tactics" in these cases:

> ...these mass copyright infringement cases have emerged as a
> strong tool for leveraging settlements–a tool whose efficacy is
> largely derived from the plaintiffs' success in avoiding the filing
> fees for multiple suits and gaining early access en masse to the
> identities of alleged infringers.

*Pacific Century*, 2012 WL 1072312, at *3.   Thus, the plaintiffs file a single case, and pay one

filing fee, to limit their expenses as against the amount of settlements they are able to negotiate.

Postponing a determination on joinder in these cases "results in lost revenue of perhaps millions of

dollars (from lost filing fees) and only encourages plaintiffs in copyright actions to join (or

misjoin) as many doe defendants as possible." *K-Beech, Inc. v. John Does 1-41*, 2012 WL 773683, at *5 (S.D. Tex. 2012).

In the four cases before this Court, plaintiffs have improperly avoided more than $25,000 in filing fees by employing its swarm joinder theory.   Considering all the cases filed by just these three plaintiffs in this district, more than $100,000 in filing fees have been evaded.   If the reported estimates that hundreds of thousands of such defendants have been sued nationwide, plaintiffs in similar actions may be evading millions of dollars in filing fees annually.    Nationwide, these plaintiffs have availed themselves of the resources of the court system on a scale rarely seen.   It seems improper that they should profit without paying statutorily required fees.

## CONCLUSION

Because K-Beech has failed to allege a valid cause of action, and for all the other reasons set forth herein, the motions to quash in *K-Beech,* CV 11-3995, DE [7], [13], [14], [16], [17], [34], are hereby GRANTED.

For all of the reasons set forth herein, the Court is not inclined to grant the broad early discovery sought by Malibu and Patrick Collins.   At the same time, these plaintiffs are allegedly the owners of copyrighted works who should not be left without any remedy.   Given the record in this case, however, this must be done in a fashion that will ensure that the rights of all parties are adequately protected.   Thus, the Court is prepared to grant these plaintiffs limited early discovery, to wit: the names and addresses (**not** email addresses or phone numbers) of **only** the subscribers designated as John Doe 1 in *Malibu 26, Malibu 11, and Patrick Collins*.   Following service of subpoenas, under the terms and conditions set forth below, the identifying information will be provided to plaintiffs at a status conference, with each John Doe 1 present, giving them an opportunity to be heard, to obtain counsel and, if appropriate, request appointment of counsel from

this Court's *pro bono* panel.

        Plaintiffs' motions for leave to serve third-party subpoenas prior to a Rule 26(f) conference, *Malibu 26,* CV 12-1147, DE [3], *Malibu 11,* CV 12-1150, DE [3], and *Patrick Collins,* CV 12-1154, DE [3], are GRANTED ONLY to the following extent:

        (1) Plaintiffs in *Malibu 26, Malibu 11 and Patrick Collins* may serve subpoenas pursuant to Rule 45 of the Federal Rules of Civil Procedure on the ISPs to obtain the name, address, and Media Access Control address for each Defendant designated as John Doe 1 in each action to whom the ISP assigned an IP address.   Under no circumstances are plaintiffs permitted to seek or obtain the telephone numbers or email addresses of these individuals, or to seek or obtain information about any potential John Doe defendant other than John Doe 1.   Plaintiff's counsel is directed to attach a copy of this Order to the subpoena.

        (2) Within seven days of service of each subpoena, the ISPs shall reasonably attempt to identify each John Doe 1 and provide him or her with a copy of the subpoena and this Order. If any of the ISPs are unable to determine, to a reasonable degree of technical certainty, the identity of the user of a particular IP address, it shall so notify Plaintiff's counsel.

        (3) The ISPs shall have twenty-one (21) days from the service of the subpoena to move to quash or otherwise object to the subpoena. Each potential defendant shall have fourteen (14) days from receipt of the subpoena from the ISP to move to quash or otherwise object to the subpoena.

        (4) Absent any motion to quash or objection, **the ISPs shall produce the information sought to the Court, not to the Plaintiff** within twenty-one (21) days after notifying

each Defendant pursuant to paragraph (2) above.  Said submission shall be made *ex parte* and under seal.  Said information will be provided to counsel for plaintiffs at a status conference to be scheduled by the Court.

(5) Plaintiff may only use the information disclosed pursuant to the subpoenas for the purpose of protecting and enforcing Plaintiffs' rights as set forth in the Complaint.

## REPORT AND RECOMMENDATION TO THE DISTRICT JUDGES

For all of the reasons set forth herein, it is respectfully recommended as follows:

1. That the complaints in *Malibu 26, Malibu 11 and Patrick Collins* be dismissed, *sua sponte* and without prejudice, as to all defendants other than the individual designated as John Doe 1 in each action;

2. That the complaint in *K-Beech* be dismissed, *sua sponte* and without prejudice, in its entirety; and

3. That plaintiffs and their counsel in all four actions be directed that any future actions of a similar nature in this district be filed as separate actions as against each John Doe defendant, so as to avoid unfair outcomes, improper joinder and waste of judicial resources, and to ensure the proper payment of filing fees.  *See, e.g., DIRECTV, Inc. v. Armellino,* 216 F.R.D. 240, 241 (E.D.N.Y. 2003) (Spatt, J.) ("plaintiff is advised that all future claims of this nature must be instituted separately against individual defendants"), (*citing CSC Holdings Inc. v. Tack,* CV 00–3555 (E.D.N.Y. June 16, 2000) (Seybert, J.)).

A copy of this Order and Report and Recommendation is being sent to counsel for the

plaintiffs by electronic filing on the date below.   Any objections to the Report and

Recommendation portion must be filed with the Clerk of the Court within 14 days.   *See* 28 U.S.C.

§636 (b)(1); Fed. R. Civ. P. 72;   Fed. R. Civ. P. 6(a) and 6(d).   Failure to file objections within

this period waives the right to appeal the District Court's Order.   *See Ferrer v. Woliver,* 2008 WL

4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker,* 118 F.3d 900, 902 (2d Cir. 1997);

*Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir. 1996).

Dated:   Central Islip, New York
         May 1, 2012


                          /s/ Gary R. Brown
                          GARY R. BROWN
                          United States Magistrate Judge

# EXHIBIT 6

United States District Court
For the Northern District of California

1    UNITED STATES DISTRICT COURT

2    NORTHERN DISTRICT OF CALIFORNIA

3    SAN JOSE DIVISION

4    AF HOLDINGS LLC,                          )    Case No.: 11-CV-03336-LHK
                                                )
5                    Plaintiff,                 )    MINUTE ORDER
                                                )
6        v.                                     )
                                                )
7    DOES 1-135,                                )
                                                )
8                    Defendants.                )
     _____        )
9

10   Clerk:  Martha Parker Brown        Plaintiff's Attorney: Brett Langdon Gibbs
     Reporter: Lee-Anne Shortridge
     Length of hearing:  34 minutes

11

12       A hearing on the Court's January 19, 2012 Order to Show Cause was held on February 22,
     2012.  A further case management conference was set for May 23, 2012.

13       At the hearing, the Court ordered Plaintiff's counsel to file, by 6:00 p.m. on February 24,
     2012, a sworn declaration(s) under penalty of perjury.  The declaration(s) must include the

14   following information:

15   •  The date that Plaintiff's counsel served subpoenas on each ISP and the date the ISP responded.
16   •  The IP addresses for which Plaintiff's counsel has made a settlement offer and how that offer
        was communicated, e.g. by mail, phone, or email.  The movants (for motions to quash) and

17      objectors to whom Plaintiff's counsel has made a settlement offer and how that offer was
        communicated.

18   •  A list of ISPs not complying with Magistrate Judge Lloyd's expedited discovery order, and for
        which IP addresses the ISP is not complying.  Include the reason, if any, given by the ISP for

19      not complying.
     •  A list of ISPs not complying with a subpoena, and for which IP addresses the ISP is not
        complying.  Include the reason, if any, given by the ISP for not complying.

20   •  A list of the ISPs for which there is a pending motion to quash.
     •  Whether, when, and by what means Plaintiff's counsel has contacted John Doe 134, the movant

21      in ECF No. 25.
     •  Whether, when, and by what means Plaintiff's counsel has contacted or attempted to contact

22      Messrs. Ferlito and Smith.
     •  A list of the IP addresses for which Plaintiff's counsel received subpoena returns and whether

23      the ISP provided all the categories of information requested by the subpoena.  If the ISP did not
        provide all categories of information, identify which categories of information were not

24      provided.
     •  A list of the BitTorrent copyright infringement cases involving multiple joined John Doe

25      Defendants filed Plaintiff's counsel's law firm or predecessor firm in federal court.  Identify the
        case by name, case number, court, and filing date.  For each case, indicate how many Doe

26      Defendants were actually served.

27   **IT IS SO ORDERED.**

28   Dated: February 22, 2012                        _Lucy H. Koh_
                                                      _____
                                                      LUCY H. KOH
                                                      United States District Judge

     Case No.: 11-CV-03336-LHK
     MINUTE ORDER

# EXHIBIT A

1)    The date that Plaintiff's counsel served subpoenas on each ISP and the date the ISP responded.

| ISP | Issued | Response |
|---|---|---|
| Advanced Colocation | 8/5/11 | |
| Covad Communications Co. | 8/5/11 | |
| AT&T Internet Services | 8/5/11 | 11/15/11 |
| Color Broadband | 8/5/11 | 8/18/11 |
| Sonic | 8/5/11 | |
| Charter Communications | 8/5/11 | 11/15/11 |
| Comcast Cable Communications | 8/5/11 | 10/10/11 |
| Frontier Communications of America | 8/5/11 | |
| Sprint PCS | 8/5/11 | |
| Unwired Broadband | 8/5/11 | 8/18/11 |
| Black Oak Computers | 8/5/11 | 9/26/11 |
| Wave Broadband | 8/5/11 | 10/24/11 |
| Clearwire US | 8/5/11 | |
| Verizon Online | 8/5/11 | |
| Surewest Broadband | 8/5/11 | |
| Cox Communications | 8/5/11 | 11/28/11 |

2)    The IP addresses for which Plaintiff's counsel has made a settlement offer and how that offer was communicated, e.g. by mail, phone, or email. The movants (for motions to quash) and objectors to whom Plaintiff's counsel has made a settlement offer and how that offer was communicated.

| Status | IP | Status | IP | Status | IP |
|---|---|---|---|---|---|
| | | USMail | 71.202.113.106 | USMail | 98.208.108.119 |
| USMail | 67.121.209.48 | USMail | 76.127.112.56 | USMail | 98.182.27.239 |
| USMail | 66.215.158.202 | USMail | 24.6.249.176 | USMail | 98.207.248.39 |
| USMail | 68.101.114.52 | USMail | 67.166.151.220 | USMail | 98.234.59.149 |
| USMail | 68.113.62.22 | USMail | 67.180.246.80 | USMail | 24.4.119.18 |
| USMail | 67.181.128.221 | USMail | 76.14.29.230 | USMail | 24.6.73.58 |
| USMail | 69.107.102.11 | USMail | 76.254.41.180 | USMail | 174.65.129.8 |
| USMail | 64.203.113.177 | USMail | 24.23.6.73 | USMail | 76.126.155.41 |
| USMail | 67.161.66.97 | USMail | 71.198.194.113 | USMail | 76.126.66.211 |
| USMail | 69.108.96.77 | USMail | 72.211.231.103 | USMail | 71.204.161.2 |
| USMail | 99.183.240.55 | USMail | 72.197.231.3 | USMail | 76.200.129.112 |
| USMail | 98.210.25.174 | USMail | 24.4.144.239 | USMail | 70.181.85.58 |
| USMail | 98.207.38.44 | USMail | 71.198.158.39 | USMail | 71.202.249.178 |
| USMail | 68.4.128.139 | USMail | 72.220.42.29 | USMail | 74.213.246.188 |
| USMail | 68.5.188.159 | USMail | 76.230.233.239 | USMail | 98.192.186.87 |
| USMail | 69.227.70.219 | USMail | 24.23.222.237 | USMail | 99.183.242.47 |
| USMail | 69.107.91.219 | USMail | 209.237.232.57 | USMail | 98.176.78.121 |
| USMail | 76.20.11.145 | USMail | 108.81.168.247 | USMail | 99.24.161.31 |
| USMail | 71.195.97.154 | USMail | 24.180.49.171 | USMail | 98.234.38.72 |
| USMail | 72.220.176.44 | USMail | 24.5.38.201 | USMail | 98.210.218.152 |
| USMail | 76.126.36.154 | USMail | 98.207.183.169 | USMail | 98.238.203.2 |
| USMail | 76.103.48.164 | USMail | 24.205.30.192 | USMail | 99.183.243.142 |
| USMail | 24.5.13.184 | USMail | 67.180.56.26 | USMail | 98.176.15.188 |
| USMail | 68.127.118.133 | USMail | 68.126.204.146 | USMail | 98.248.213.208 |
| USMail | 68.5.122.173 | USMail | 68.111.244.226 | USMail | 99.41.79.188 |
| USMail | 68.7.130.203 | USMail | 68.105.66.166 | USMail | 67.169.107.114 |
| USMail | 68.8.57.53 | USMail | 72.197.43.207 | USMail | 67.187.248.194 |

*In cases where a motion to quash was filed.*

| Status | IP |
|---|---|
| USMail | 71.139.12.128 |

USMail  71.83.208.158

3)     A list of ISPs not complying with Magistrate Judge Lloyd's expedited discovery order, and for which IP addresses the ISP is not complying.  Include the reason, if any, given by the ISP for not complying.

| ISP | IP Addresses | Reason |
|---|---|---|
| Advanced Colocation | ALL | None provided |
| Black Oak Computers | 66.160.133.102 | Two Subpoenas issued, one completed, the other no response, no reason provided |
| Clearwire US | ALL | None provided |
| Covad Communications Co. | ALL | None provided |
| Frontier Communications of America | ALL | None provided |
| Sonic | ALL | None provided |
| Sprint PCS | ALL | None provided |
| Surewest Broadband | ALL | None provided |
| Verizon Online | ALL | None provided |

4)     A list of ISPs not complying with a subpoena, and for which IP addresses the ISP is not complying.  Include the reason, if any, given by the ISP for not complying.

| ISP | IP Addresses | Reason |
|---|---|---|
| Advanced Colocation | ALL | None provided |
| Black Oak Computers | 66.160.133.102 | Two Subpoenas issued, one completed, the other no response, no reason provided |
| Clearwire US | ALL | None provided |
| Covad Communications Co. | ALL | None provided |
| Frontier Communications of America | ALL | None provided |
| Sonic | ALL | None provided |
| Sprint PCS | ALL | None provided |
| Surewest Broadband | 0 | None provided |
| Verizon Online | 0 | None provided |

5)     A list of the ISPs for which there is a pending motion to quash.
AT&T, COMCAST, CHARTER & COX

6)     Whether, when, and by what means Plaintiff's counsel has contacted John Doe 134, the movant in ECF No. 25.
Plaintiff's counsel has not attempted to contact the unidentified individual referred to by the Court as "John Doe 134."

7)     Whether, when, and by what means Plaintiff's counsel has contacted or attempted to contact Messrs. Ferlito and Smith.
Plaintiff's counsel attempted to contact Mr Ferlito by U.S mail.  Plaintiff's counsel attempted to contact Mr. Smith by U.S. mail.

8)     A list of the IP addresses for which Plaintiff's counsel received subpoena returns and whether the ISP provided all the categories of information requested by the subpoena. If the ISP did not provide all categories of information, identify which categories of information were not provided.

| IP Address | Missing | | | | |
|---|---|---|---|---|---|
| | | | | email | 76.200.129.112 | Phone, email |
| 68.126.204.146 | Phone, email | | 69.107.91.219 | Phone, email | 76.254.41.180 | Phone, email |
| 68.127.118.133 | Phone, email | | 69.108.96.77 | Phone | | |
| | | | 69.227.70.219 | Phone | 99.183.240.55 | Phone, email |
| 69.107.102.11 | Phone, | | 71.139.12.128 | Email | | |

| | | | | | |
|---|---|---|---|---|---|
| 99.183.242.47 | Phone, email | 24.5.13.184 | Email | 76.126.66.211 | Email |
| 99.183.243.142 | Phone, email | 67.161.66.97 | Email | 98.192.186.87 | Email |
| | | 67.166.151.220 | Email | 98.207.248.39 | Email |
| 99.24.161.31 | Phone, email | 67.169.107.114 | Email | 98.208.108.119 | Email |
| | | 67.180.56.26 | Email | 98.210.218.152 | Email |
| | | 67.181.128.221 | Email | 98.210.25.174 | Email |
| 99.41.79.188 | Phone | 67.187.248.194 | Email | 98.234.128.170 | Email |
| 209.237.232.57 | Phone | 71.198.158.39 | Email | 98.234.38.72 | Email |
| 68.113.62.22 | Email | 71.202.113.106 | Email | 98.234.59.149 | Email |
| 74.213.246.188 | Email | 71.202.249.178 | Email | 98.248.213.208 | Email |
| 24.23.222.237 | Email | 76.103.48.164 | Email | 68.101.114.52 | Email |
| 24.23.6.73 | Email | 76.126.155.41 | Email | 72.197.231.3 | Phone, email |
| 24.4.144.239 | Email | 76.126.36.154 | Email | | |

9)      A list of the BitTorrent copyright infringement cases involving multiple joined John Doe Defendants filed Plaintiff's counsel's law firm or predecessor firm in federal court. Identify the case by name, case number, court, and filing date. For each case, indicate how many Doe Defendants were actually served.

Although our records indicate that we have filed suits against individual copyright infringement defendants, our records indicate that no defendants have been served in the below-listed cases.

| Case Name | Case Number | Court | Filing date |
|---|---|---|---|
| Lightspeed Media Corporation v. Does 1-9 | 4:11-cv-02261 | ND CA | 5/6/11 |
| MCGIP, LLC v. Does 1-9 | 3:11-cv-02262 | ND CA | 5/6/11 |
| CP Productions, Inc. v. Does 1-300 | 1:10-cv-06255 | ND IL | 9/29/10 |
| Future Blue, Inc. v. Does 1-300 | 1:10-cv-06256 | ND IL | 9/29/10 |
| First Time Videos LLC v. Does 1-500 | 1:10-cv-06254 | ND IL | 9/29/11 |
| Hard Drive Productions, Inc. v. Does 1-100 | 1:10-cv-05606 | ND IL | 9/2/10 |
| Lightspeed Media Corporation v. Does 1-100 | 1:10-cv-05604 | ND IL | 9/2/10 |
| Millennium TGA, Inc. v. Does 1-100 | 1:10-cv-05603 | ND IL | 9/2/10 |
| In the Matter Of a Petition By Ingenuity13 LLC | 2:11-mc-00084 | ED CA | 10/28/11 |
| Pacific Century International Ltd. v. Does 1-101 | 4:11-cv-02533 | ND CA | 5/25/11 |
| Boy Racer Inc. v. Does 1-10 | 1:11-cv-00592 | SD OH | 8/26/11 |
| Hard Drive Productions, Inc. v. Does 1-10 | 1:11-cv-02980 | ND IL | 5/4/11 |
| Boy Racer Inc. v. Does 1-10 | 3:11-cv-00492 | WD KY | 8/31/11 |
| CP Productions, Inc. v. Does 1-12 | 3:11-cv-02259 | ND CA | 5/6/11 |
| Hard Drive Productions, Inc. v. Does 1-11 | 1:11-cv-23033 | SD FL | 8/23/11 |
| Hard Drive Productions, Inc. v. Does 1-12 | 1:11-cv-00595 | SD OH | 8/26/11 |
| MCGIP, LLC v. Does 1-14 | 1:11-cv-02887 | ND IL | 4/29/11 |
| CP Productions, Inc. v. Does 1-14 | 1:11-cv-22204 | SD FL | 6/17/11 |
| Hard Drive Productions. Inc. v. Does 1-14 | 1:11-cv-02981 | ND IL | 5/4/11 |
| Pacific Century International LTD v. Does 1-14 | 1:11-cv-03118 | ND IL | 5/10/11 |
| Boy Racer Inc. v. Does 1-17 | 1:11-cv-05416 | ND IL | 8/10/11 |
| MCGIP, LLC v. Does 1-316 | 1:10-cv-06677 | ND IL | 10/15/10 |
| Hard Drive Productions, Inv. v. Does 1-16 | 1:11-cv-23064 | SD FL | 8/25/11 |
| Hard Drive Productions, Inc. v. Does 1-16 | 1:11-cv-03108 | ND IL | 5/10/11 |
| VPR Internationale v. Does 1-17 | 4:11-cv-01494 | ND CA | 3/28/11 |
| First Time Videos LLC v. Does 1-18 | 4:11-cv-00069 | SD IN | 6/14/11 |
| MCGIP, LLC v. Does 1-17 | 3:11-cv-50062 | ND IL | 3/9/11 |
| Boy Racer Inc. v. Does 1-17 | 1:11-cv-03097 | ND IL | 5/9/11 |
| VPR International v. Does 1-1017 | 2:11-cv-02068 | ND IL | 3/8/11 |
| Hard Drive Productions, Inc. v. Does 1-118 | 4:11-cv-01567 | ND CA | 3/3/11 |
| Hard Drive Productions, Inv. v. Does 1-18 | 1:11-cv-23032 | SD FL | 8/23/11 |

| | | | |
|---|---|---|---|
| MCGIP, LLC v. Does 1-18 | 3:11-cv-01495 | ND CA | 3/28/11 |
| Pink Lotus Entertainment LLC v. Does 1-20 | 1:11-cv-03048 | ND IL | 5/6/11 |
| MCGIP, LLC v. Does 1-20 | 1:11-cv-04486 | ND IL | 7/1/11 |
| Millennium TGA, inc. v. Does 1-21 | 3:11-cv-02258 | ND CA | 5/6/11 |
| MCGIP, LLC v. Does 1-21 | 4:11-cv-01783 | ND CA | 4/12/11 |
| Hard Drive Productions, Inc. v. Does 1-21 | 4:11-cv-00059 | SD IN | 5/20/11 |
| Hard Drive Productions, Inv. v. Does 1-20 | 1:11-cv-22208 | SD FL | 6/17/11 |
| AF Holdings LLC v. Does 1-20 | 3:11-cv-00491 | WD KY | 8/31/11 |
| Millennium TGA, inc. v. Does 1-21 | 5:11-cv-01739 | ND CA | 4/8/11 |
| Boy Racer Inc. v. Does 1-23 | 4:11-cv-00070 | SD IN | 6/14/11 |
| First Time Videos LLC v. Does 1-23 | 1:11-cv-05417 | ND IL | 8/10/11 |
| Boy Racer Inc. V. Does 1-22 | 1:11-cv-02984 | ND IL | 5/4/11 |
| MCGIP, LLC v. Does 1-24 | 1:11-cv-04488 | ND IL | 7/1/11 |
| Hard Drive Productions Inc. v. Does 1-25 | 1:11-cv-03864 | ND IL | 6/7/11 |
| Openmind Solutions, Inc. v. Does 1-2,925 | 3:11-cv-00092 | SD IL | 2/2/11 |
| MCGIP, LLC v. Does 1-24 | 1:11-cv-02985 | ND IL | 5/4/11 |
| Hard Drive Productions, Inc. v. Does 1-24 | 1:11-cv-02829 | ND IL | 4/27/11 |
| MCGIP LLC v. Does 1-26 | 5:11-cv-03679 | ND CA | 7/27/11 |
| Hard Drive Productions, Inc. v. Does 1-27 | 1:11-cv-03863 | ND IL | 6/7/11 |
| First Time Videos LLC v. Does 1-27 | 1:11-cv-02890 | ND IL | 4/29/11 |
| Pacific Century International Ltd, v. Does 1-129 | 5:11-cv-03681 | ND CA | 7/27/11 |
| First Time Videos LLC v. Does 1-28 | 1:11-cv-02982 | ND IL | 5/4/11 |
| MCGIP LLC v. Does 1-30 | 5:11-cv-03680 | ND CA | 7/27/11 |
| Hard Drive Productions, Inv. v. Does 1-130 | 4:11-cv-03826 | ND CA | 8/3/11 |
| AF Holdings LLC v. Does 1-29 | 0:11-cv-01794 | D MN | 7/6/11 |
| Hard Drive Productions, Inc. v. Does 1-30 | 1:11-cv-22102 | SD FL | 6/9/11 |
| Pacific century International LTD v. Does 1-31 | 1:11-cv-09064 | ND IL | 12/21/11 |
| Hard Drive Productions, Inv. v. Does 1-33 | 4:11-cv-03827 | ND CA | 8/3/11 |
| Hard Drive Productions, Inv. v. Does 1-32 | 1:11-cv-22206 | SD FL | 6/17/11 |
| MCGIP, LLC v. Does 1-32 | 1:11-cv-22210 | SD FL | 6/17/11 |
| Pacific Century International LTD v. Does 1-34 | 1:11-cv-03857 | ND IL | 6/7/11 |
| Hard Drive Productions, Inc. v. Does 1-35 | 1:11-cv-03866 | ND IL | 6/7/11 |
| Boy Racer Inc v. Does 1-34 | 1:11-cv-23035 | SD FL | 8/23/11 |
| AF Holdings LLC v. Does 1-135 | 4:11-cv-03336 | ND CA | 7/7/11 |
| Bubble Gum Productions, LLC v. Does 1-37 | 1:12-cv-00595 | ND IL | 1/26/12 |
| First Time Videos LLC v. Does 1-37 | 4:11-cv-01675 | ND CA | 4/6/11 |
| Openmind Solutions, Inc. v. Does 1-39 | 3:11-cv-03311 | ND CA | 7/6/11 |
| First Time Videos LLC v. Does 1-541 | 1:11-cv-02031-RLW | DC | 11/15/11 |
| Hard Drive Productions, Inc. v. Does 1-42 | 3:11-cv-01956 | ND CA | 4/22/11 |
| First Time Videos LLC v. Does 1-43 | 1:11-cv-09066 | ND IL | 12/21/11 |
| MCGIP, LLC v. Does 1-44 | 1:11-cv-03098 | ND IL | 5/9/11 |
| Pacific Century International LTD v. Does 1-44 | 1:11-cv-04825 | ND IL | 7/18/11 |
| Hard Drive Productions, Inc. v. Does 1-44 | 1:11-cv-02828 | ND IL | 4/27/11 |
| Pink Lotus Entertainment LLC v. Does 1-46 | 5:11-cv-02263 | ND CA | 5/6/11 |
| First Time Videos LLC v. Does 1-46 | 3:11-cv-03822 | ND CA | 8/3/11 |
| Hard Drive Productions, Inc v. Does 1-46 | 3:11-cv-01959 | ND CA | 4/22/11 |
| Pacific Century International, LTD v. Does 1-48 | 3:11-cv-03823 | ND CA | 8/3/11 |
| Hard Drive Productions, Inc. v. Does 1-48 | 3:11-cv-01957 | ND CA | 4/22/11 |
| Hard Drive Productions, Inc. v. Does 1-48 | 1:11-cv-09062 | ND IL | 12/21/11 |
| MCGIP, LLC v. Does 1-49 | 5:11-cv-01801 | ND CA | 4/13/11 |
| MCGIP, LLC v. Does 1-149 | 4:11-cv-02331 | ND CA | 5/11/11 |
| Hard Drive Productions, Inc. v. Does 1-51 | 1:11-cv-05414 | ND IL | 8/10/11 |
| Boy Racer Inc v. Does 2-52 | 5:11-cv-02834 | ND CA | 6/14/11 |
| Boy Racer Inc. v. Does 1-52 | 5:11-cv-02329 | ND CA | 5/11/11 |
| Hard Drive Productions, Inc. v. Does 1-53 | 3:11-cv-02330 | ND CA | 5/11/11 |
| Pink Lotus Entertainment LLC v. John Does 1-53 | 1:11-cv-22103 | SD FL | 6/9/11 |

| | | | |
|---|---|---|---|
| MCGIP LLC v. Does 1-55 | 3:11-cv-03312 | ND CA | 7/6/11 |
| Hard Drive Productions, Inv. v. Does 1-55 | 1:11-cv-02798 | ND IL | 4/27/11 |
| Hard Drive Productions, Inc. v. Does 1-58 | 4:11-cv-02537 | ND CA | 5/25/11 |
| AF Holdings LLC v. Does 1-1,058 | 1:12-cv-00048 | DC | 1/11/12 |
| Boy Racer Inc v. Does 1-60 | 3:11-cv-01738 | ND CA | 4/8/11 |
| AF Holdings LLC v. Does 1-62 | 1:11-cv-00593 | SD OH | 8/26/11 |
| AF Holdings LLC v. Does 1-162 | 1:11-cv-23036 | SD FL | 8/23/11 |
| First Time Videos LLC v. Does 1-63 | 1:11-cv-03837 | ND IL | 6/6/11 |
| MCGIP, LLC v. Does 1-1,164 | 1:10-cv-07675 | ND IL | 12/2/10 |
| Hard Drive Productions, Inv. v. Does 1-166 | 5:11-cv-03682 | ND CA | 7/27/11 |
| Openmind Solutions, Inc. v. Does 1-565 | 1:11-cv-01883 | DC | 10/25/11 |
| Hard Drive Productions, Inc.v. Does 1-66 | 5:11-cv-03005 | ND CA | 6/17/11 |
| Boy Racer Inc v. Does 2-71 | 5:11-cv-02833 | ND CA | 6/14/11 |
| Boy Racer Inc. v. Does 1-71 | 5:11-cv-01958 | ND CA | 4/22/11 |
| Heartbreaker Productions, Inc. v. Does 1-71 | 1:11-cv-02860 | ND IL | 4/28/11 |
| Boy Racer Inc v. Does 1-73 | 3:11-cv-02534 | ND CA | 5/25/11 |
| First Time Videos LLC v. Does 1-76 | 1:11-cv-03831 | ND IL | 6/6/11 |
| Hard Drive Productions, Inc. v. Does 1-80 | 5:11-cv-02535 | ND CA | 5/25/11 |
| Bubble Gum Productions, LLC v. Does 1-80 | 1:12-cv-20367 | SD FL | 1/30/12 |
| Hard Drive Productions, Inv. v. Does 1-84 | 5:11-cv-03648 | ND CA | 7/26/11 |
| Pacific Century International LTD v. Does 1-87 | 3:11-cv-02915 | ND CA | 6/14/11 |
| First Time Videos LLC v. Does 1-186 | 3:11-cv-03310 | ND CA | 7/6/11 |
| Hard Drive Productions, Inc v. Does 1-87 | 3:11-cv-02333 | ND CA | 5/11/11 |
| Hard Drive Productions, Inc v. Does 1-188 | 3:11-cv-01566 | ND CA | 3/31/11 |
| Hard Drive Productions, Inc v. Does 1-87 | 5:11-cv-03004 | ND CA | 6/17/11 |
| Hard Drive Productions, Inv. v. Does 1-90 | 5:11-cv-03825 | ND CA | 8/3/11 |
| First Time Videos LLC v. Does 1-294 | 3:11-cv-02916 | ND CA | 6/14/11 |
| Hard Drive Productions, Inv. v. Does 1-1,495 | 1:11-cv-01741 | DC | 9/27/11 |
| AF Holdings LLC v. Does 1-96 | 3:11-cv-03335 | ND CA | 7/7/11 |
| AF Holdings LLC v. Does 1-97 | 4:11-cv-03067 | ND CA | 6/21/11 |
| Boy Racer Inc. v. Does 1-98 | 3:11-cv-02536 | ND CA | 5/25/11 |

# EXHIBIT A

Thursday, May 3, 2012                                         12-021-DMCA

REDACTED

Re: UNITED STATES DISTRICT COURT - Northern Illinois
Case # 1:12-CV-01532

# READ AT ONCE

## NOTICE REGARDING RECEIPT OF SUBPOENA
## SEEKING DISCLOSURE OF YOUR IDENTITY

A subpoena issued by a court has been served on AT&T requiring us to disclose your name, street address, and other personally identifiable information to a company that seeks to name you as a defendant in a pending lawsuit.

If you (i) take legal action in opposition to the subpoena and (ii) notify AT&T of such legal action within the time frame set forth below, AT&T will not provide your personal information until and unless the court orders AT&T to do so. Otherwise, AT&T is legally obligated to provide your personal information in response to the subpoena.

The company that filed the lawsuit, called the "Plaintiff," claims that various people have infringed its copyrights by illegally downloading and/or distributing a movie. However, the Plaintiff does not know the actual names or addresses of these people – only the Internet Protocol address ("IP address") of the Internet account associated with the alleged activity. That is why the Plaintiff's legal filing identifies the Defendants as anonymous individuals, such as "John Doe," "Jane Doe," "Doe No. X," or just simply "Does."

In order to determine the identities of the people associated with IP addresses it has collected, the Plaintiff has issued a subpoena to AT&T, and has asked us to disclose your personally identifiable information, such as your name, street address(es), and your email address, and any stored MAC address. Attached is a copy of the subpoena seeking your information, including the exhibit page that contains the IP address that has been associated with your Internet account, with the date and time that someone using your Internet account is alleged to have used the Internet to download or upload the movie.

**The subpoena specifically targets IP 75.5.75.57 as it was used on 1/7/2012 at 6:22:34 AM GMT.**
**Our records indicate that this IP was assigned to your account for the following period: 75.5.75.57 Thu, 05 Jan 2012 19:43:27 GMT - Sat, 07 Jan 2012 08:13:46 GMT**

This is a civil lawsuit, not a criminal case, and it does not accuse you of a crime. In this lawsuit, however, the Plaintiff seeks to obtain a final judgment requiring you to pay the Plaintiff money for the uploading or downloading of the movie without permission. If the Plaintiff receives your information from AT&T, the Plaintiff may decide to add you as a named defendant to the lawsuit.

## INFORMATION ABOUT YOU HAS NOT YET BEEN DISCLOSED, BUT WILL BE DISCLOSED IN 15 CALENDAR DAYS IF YOU DO NOT TAKE ACTION

**AT&T**

## INFORMATION ABOUT YOU HAS NOT YET BEEN DISCLOSED, BUT WILL BE DISCLOSED IN 15 CALENDAR DAYS IF YOU DO NOT TAKE ACTION

Your personal information has not yet been disclosed to the Plaintiff.

If you do not want AT&T to disclose your information to the Plaintiff, you have 15 calendar days from the date of this notice to file a request with the court to block (or "quash") the subpoena or to dismiss the case against you before you are identified. It is very important that you also provide AT&T -- within that same 15 calendar day period -- with a copy of the documents you have filed or are filing with the court. Notice to AT&T of your court filing should be sent by fax to (919) 319-8154.

If you file a request with the court and provide AT&T with a copy of your request to the court as described above, your identity will not be disclosed unless the court makes a decision denying your request. Otherwise, <u>AT&T will send your personally identifiable information to the Plaintiff after 15 calendar days from the date of this notice.</u>

AT&T cannot advise you about what grounds exist, if any, to challenge this subpoena. For legal advice, you should consult an attorney who can discuss your particular situation. The enforcement of copyrights on the Internet is a complicated subject, and we recommend you seek assistance from a legal professional with expertise in this area before deciding whether and how to seek relief from the court.

Information about specific lawsuits in federal court is generally available from court documents accessible on a public website known as "PACER," which stands for "Public Access to Court Electronic Records." In order to view court documents using PACER, you must first set up an account following the instructions on the PACER website, www.pacer.gov. Once you have an account, you can access court documents for a nominal fee using the name of the court and the number of the case. The subpoena attached to this notice indicates the case number and the name of the court in which the lawsuit is pending.

Again, AT&T is notifying you because AT&T has a legal obligation to respond to the subpoena, and AT&T will do so unless you take action as described above. If you received this notice by email, please note that the email address from which this notice was sent is for outgoing messages only.

Manager of Security & Copyright Infringement
AT&T Business IP Services
Office of Registered Copyright Agent

*RESTRICTED-PROPRIETARY INFORMATION*
This letter or e-mail and any files transmitted with it are the property of AT&T, are confidential, and are intended solely for the use of the individual or entity to whom this letter is addressed. If you are not one of the named recipient(s) or otherwise have reason to believe that you have received this message in error, please notify the sender and delete this message immediately from your computer. Any other use, retention, dissemination, forwarding, printing, or copying of this letter is strictly prohibited.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HARD DRIVE PRODUCTIONS, INC., | CASE NO. 1:12-CV-1532 |
| Plaintiff, | Judge: Hon. Edmond E. Chang |
| v. | Magistrate Judge: Hon. Susan E. Cox |
| DOES 1 – 54, | **ORDER** |
| Defendants. | |

## ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO TAKE DISCOVERY PRIOR TO THE RULE 26(f) CONFERENCE

The Court has reviewed the Complaint with attached Exhibits, Plaintiff's Motion for Leave to Take Discovery Prior to the Rule 26(f) Conference and all the papers filed in connection with the motion, and relevant case law. Accordingly, it is hereby

ORDERED that Plaintiff's Motion for Leave to Take Discovery Prior to the Rule 26(f) Conference is GRANTED; it is further

ORDERED that Plaintiff may immediately serve Rule 45 subpoenas, which are limited to the following categories of entities and information:

From Internet Service Providers (ISPs) identified in the Exhibit A attached to the Complaint and any other entity identified as a provider of Internet services to one of the Doe Defendants in response to a subpoena or as a result of ongoing BitTorrent activity monitoring: information sufficient to identify each Defendant, including name, current

(and permanent) address, telephone number, e-mail address, and Media Access Control address; it is further

ORDERED any information disclosed to the Plaintiff in response to a Rule 45 subpoena may be used by the Plaintiff solely for the purpose of protecting Plaintiff's rights as set forth in its Complaint; it is further

ORDERED that Plaintiff and any entity which receives a subpoena shall confer, if necessary, with respect to the issue of payment for the information requested in the subpoena or for resolution of IP addresses which are not controlled by such entity, duplicate IP addresses that resolve to the same individual, other IP addresses that do not provide the name and other information requested of a unique individual, or for the entity's internal costs to notify its customers; it is further

ORDERED that any entity which receives a subpoena and elects to charge for the costs of production shall provide a billing summary and any cost reports that serve as a basis for such billing summary and any costs claimed by such entity; it is further

ORDERED that Plaintiff shall serve a copy of this Order along with any subpoenas issued pursuant to this Order; it is further

ORDERED that if any entity subpoenaed pursuant to this Order wishes to move to quash the subpoena, it must do so before the return date of the subpoena, which shall be 30 days from the date of service; it is further

ORDERED that the subpoenaed entity shall preserve any subpoenaed information pending the resolution of any timely-filed motion to quash;

DATED:  March 7, 2012

Edmond E. Chang

United States District Judge

SUBPOENA ATTACHMENT

The times listed below are in Coordinated Universal Time (UTC)

| IP Address | Date/Time (UTC) |
|---|---|
| 70.225.165.22 | 2011-11-22 03:29:35 |
| 75.49.210.21 | 2011-11-29 06:10:16 |
| 75.5.75.57 | 2012-01-07 06:22:34 |
| 75.63.59.176 | 2011-12-05 15:20:12 |
| 76.202.222.57 | 2011-11-30 04:30:23 |
| 99.135.186.82 | 2011-11-23 11:30:19 |
| 99.142.71.169 | 2011-11-27 23:12:36 |

AO 88B (Rev. 06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Northern District of Illinois

| | | |
|---|---|---|
| HARD DRIVE PRODUCTIONS, INC. | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No.  1:12-cv-01532 |
| DOES 1-54 | ) | |
| | ) | (If the action is pending in another district, state where: |
| *Defendant* | ) | ) |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Subpoena Compliance/ Custodian of Records:  SBC Internet Services d/b/a AT&T Internet Services c/o C T Corporation System; 208 S. LaSalle, St. Ste. 814, Chicago, IL 60604-1101.

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and permit their inspection, copying, testing, or sampling of the material: In accordance with the conditions in the attached order, provide the name, current (and permanent) addresses, telephone numbers, e-mail addresses and Media Access Control addresses of all persons whose IP addresses are listed in the attached spreadsheet. We will be pleased to provide data to you in the most efficient and cost effective format if you let us know what your preferred format is.

| Place: Prenda Law Inc. | Date and Time: |
|---|---|
| 161 N Clark St. Suite 3200 Chicago, IL 60601 | 04/20/2012 10:00 am |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The provisions of Fed. R. Civ. P. 45(c), relating to your protection as a person subject to a subpoena, and Rule 45 (d) and (e), relating to your duty to respond to this subpoena and the potential consequences of not doing so, are attached.

Date:    03/08/2012

CLERK OF COURT

OR

_____          _____
Signature of Clerk or Deputy Clerk                    Attorney's signature

The name, address, e-mail, and telephone number of the attorney representing *(name of party)*
Hard Drive Productions, Inc.                                          , who issues or requests this subpoena, are:

Paul Duffy, Prenda Law, Inc.; 161 N. Clark St. Suite 3200, Chicago IL 60601; paduffy@wefightpiracy.com; (312) 880-9160



Protecting Intellectual Property

March 8, 2012

<u>Via Hand Delivery</u>

Re:     *Hard Drive Productions Inc. v. Does 1-54*
        *1:12-cv-01532*

Dear Custodian of Records:

Enclosed, please find a subpoena and attachment issued in the above-referenced matter, which is currently pending in the United States District Court for the Northern District of Illinois, Eastern Division. Specifically, our client is requesting identifying information with respect to subscriber(s) who were associated with IP addresses controlled by your organization at a given date and time. In our subpoena, we have included the IP address, Time, and Time Zone in our search requests.

We regularly receive requests from Internet Service Providers for electronic copies of the enclosed documents, which we are pleased to fulfill. To receive these documents please e-mail your request to our office at the following e-mail address:

subpoena@wefightpiracy.com

If you have any other questions or concerns regarding this request please direct them to the above e-mail address or feel free to call our offices directly at 312-344-3207. We will do everything in our power to minimize the burden imposed on your organization associated with our request.

Sincerely,

*Prenda Law Inc. Subpoena Team*

Fax: 312.893.5677
Fax: 305.748.2103            161 N Clark St., Suite 3200, Chicago, IL 60601          Tel: 312.880.9160
                            1111 Lincoln Rd., Suite 400, Miami Beach, FL 33139        Tel: 305.748.2102

www.wefightpiracy.com

# EXHIBIT B

# Kevin Guynn

| | |
|---|---|
| **From:** | Kevin Guynn |
| **Sent:** | Monday, May 14, 2012 5:36 PM |
| **To:** | paduffy@wefightpiracy.com |
| **Cc:** | Lu Onorato |
| **Subject:** | Hard Drive Productions v. Does 1-48 and v. Does 1-54, our refs 110168 and 111046 |
| **Attachments:** | Prenda letter 5.14.12.pdf |

Dear Paul,

Please see attached letter.

Kevin W. Guynn | ATTORNEY AT LAW

 GREER BURNS & CRAIN
INTELLECTUAL PROPERTY LAW

300 S. Wacker Dr. Suite 2500 | Chicago, IL 60606 | Direct: (312) 987.2917 | Main: (312) 360.0080 | Fax: (312) 360.9315 |
www.gbclaw.net

CONFIDENTIALITY NOTE This electronic mail may contain information which is confidential or privileged and exempt from disclosure under applicable law. The information is intended to be for the use of the recipients named in this mail. If you are not an intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is without authorization and is prohibited. If you receive this electronic mail in error, please notify us by return electronic mail and destroy this mail immediately. Thank you for your cooperation.



GREER BURNS & CRAIN LTD
INTELLECTUAL PROPERTY LAW

300 S. Wacker Drive
Suite 2500
Chicago, IL 60606

Phone: 312.360.0080
Fax: 312.360.9315
www.gbclaw.net

May 14, 2012

Mr. Paul Duffy
Prenda Law Inc.
161 N. Clark St.
Chicago, IL 60601
paduffy@wefightpiracy.com

Via email

Patrick G. Burns
Lawrence J. Crain
Steven P. Fallon
Paul G. Juettner
Thomas R. Fitzsimons
Kevin W. Guynn
James K. Folker
B. Joe Kim
Carole A. Mickelson
Laura R. Wanek
Christopher S. Hermanson
Amy C. Ziegler
Patricia L. Prior *

Arik B. Ranson
Gavin J. O'Keefe
Kevin T. Bastuba
Justin R. Gaudio
Tanja Proehl, Ph.D. **
Danielle M. Beach

Roger D. Greer (1941-2011)

Of Counsel:
John W. Chestnut
Thomas E. Hill

Patent Agent:
Tanja C. Sienko, Ph.D.

* Admitted in Ohio only
**Admitted in New York only

Re:    Hard Drive Productions v. Does 1-48, 1:11-cv-09062
       Hard Drive Productions v. Does 1-54, 1:12-cv-01532
Our Files: 110168 and 111046

Dear Paul,

As you know, I represent one of the Doe defendants in case 1:11-cv-09062, and have filed a Motion to Quash the subpoena since my client was not involved in the downloading alleged to have occured. The same person has been contacted with respect to the second case listed above, and we intend to file a similar, but somewhat expanded motion in the second case, particularly in view of the Chief Judge's recent decision in some related cases, and decisions from other courts that have been dealing with similar issues.

To avoid time and expense on both sides, I would like to propose an approach for you to confirm that my client was not involved in any downloading of the movies that are the subject of the two lawsuits. In that regard, we will make my client's computers (a Gateway desktop and a Dell laptop) available to a court appointed computer forensic expert to examine. If the files relating to the lawsuits are not present on either computer, you will agree to pay the expert's fees for making the analysis and will agree to drop my client from the litigation. If either of the files is present, my client will pay the expert's fees.

Since AT&T has set a short deadline for my client to file a response to the subpoena, I will need to have a response from you by the close of



business on Tuesday May 15, 2012, otherwise I will proceed to file the Motion to Quash.  Of course the offer will remain available to your client after we file the Motion, but the Motion to Quash will have been filed and will need to be dealt with.

I look forward to receiving your prompt response.

Very truly yours,

GREER, BURNS & CRAIN, LTD.

By        Kevin W. Guynn
          Direct 312-987-2917 | kguynn@gbclaw.net

KWG:lo