**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| AF HOLDINGS, LLC, | CASE NO. 1:12-cv-3516 |
| Plaintiff, | |
| v. | Judge: Hon. Gary Feinerman |
| COMCAST CABLE COMMUNICATIONS, LLC, | |
| Defendant. | |

**PLAINTIFF'S REPLY TO COMCAST'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FO ORDER TO SHOW CAUSE**

Comcast Cable Communications, LLC ("Comcast") filed a memorandum in opposition to the Plaintiffs' amended motion for order to show cause. (ECF No. 11.) Comcast argues that the Court should excuse that its failure to file timely objection in four different cases because "the timeliness of written objections is not dispositive." (*Id* at 2.) Comcast further argues that the Plaintiffs' "subpoenas are overbroad and exceed the bounds of fair discovery, Comcast is a nonparty acting in good faith, and Comcast's counsel was in contact with counsel for the plaintiffs." (*Id.*) Finally, Comcast argues that "plaintiffs should not be allowed to profit from unfair litigation tactics." (*Id.*) These arguments, however, do not excuse Comcast's failure to timely file its objection and failure to comply with Plaintiffs' valid subpoenas.

**ARGUMENT**

This brief consists of three parts. Part I argues that the timeliness of Comcast's written objections is dispositive. Part II argues that Comcast has not established that unusual circumstances and good cause exist for it to file its objections in an untimely manner. Part III

argues Comcast's *ad hominem* attacks and name-calling do not provide Comcast with a basis to file untimely objections to Plaintiffs' valid subpoenas.

I. **THE TIMELINESS OF COMCAST'S WRITTEN OBJECTIONS IS DISPOSITIVE**

Comcast argues that the Court should excuse that its failure to file timely objection in four different cases because "the timeliness of written objections is not dispositive." (ECF No. 11 at 2.) Comcast does not further elaborate on this argument. The timeliness of Comcast's objections is dispositive for two reasons. First, the information the plaintiffs seek is under imminent threat of destruction and any delay by Comcast can potentially prevent the Plaintiffs from pursuing their claims against the infringers of their copyrighted works. *See e.g.*, *AF Holdings LLC v. Does 1-31*, No. 12-20922 (S.D. Fla. Mar. 7, 2012), ECF No. 4-1 at 4 (explaining that "time is of the essence here because ISPs typically retain user activity logs containing the information sought by Plaintiff for only a limited period of time before erasing the data. If that information is erased, Plaintiff will have no ability to identify the Defendants, and thus will be unable to pursue its lawsuit to protect the copyrighted works.") (internal citations omitted).

Second, the infringement of the Plaintiffs' copyrighted work is continuous and ongoing. Any delay by Comcast will result in additional harm to the Plaintiffs. *See e.g.*, *Pacific Century International LTD v. Does 1-37*, No. 11-4430 (S.D. Tex. Dec. 16, 2011), ECF No. 2 at 6 ("because infringement is ongoing and continuous, Plaintiff needs to discover the identities of Doe Defendants to take quick actions to prevent further irreparable harm. Without a way to contact the Defendants, Plaintiff will continue to suffer ongoing, continuous injury due to Defendants' illegal activities."). The timeliness of Comcast's objections, therefore, is highly dispositive.

Comcast's delay in objecting to the Plaintiffs' subpoenas is part of a wider campaign to deny and delay the Plaintiffs', and other similar copyright holders', ability to protect their copyrighted works. Comcast routinely objects to subpoenas issued to it by producers of adult content. Even after courts regularly order Comcast to comply with the subpoenas, Comcast fights tooth and nail to resist complying. *See e.g.*, *Millennium TGA, Inc. v. John Doe*, No. 12-mc-00150 (D.C. 2012) (Comcast objected to the plaintiffs court-authorized subpoena, objected to the court's order compelling Comcast to comply with the plaintiffs subpoena, and, finally, filed a motion for extension of time to comply with the plaintiff's subpoena). Comcast has yet to provide that plaintiff with the information it sought in its subpoena. *Id.* Comcast is not a super judge that can pick-and-choose which subpoenas it wants to comply with simply because it dislikes the adult content producers that issued the subpoena.

## II. COMCAST HAS NOT ESTABLISHED THAT UNUSUAL CIRCUMSTANCES AND GOOD CAUSE EXIST FOR IT TO FILE ITS OBJECTIONS IN AN UNTIMELY MANNER

Comcast argues that a court has the discretion to consider an untimely objection to a subpoena "in unusual circumstances and for good cause." (ECF No. 11 at 5) (citing *Yousuf v. Samantar*, 451 F.3d 248 (D.C. 2006). This is not such a case. First, there are no unusual circumstances present here. Plaintiffs have served dozens of subpoenas on Comcast seeking basically the same information sought in the subpoenas at issue here. In the past, Comcast has either complied with the subpoenas, or, more recently as part of its campaign to deny adult content producer plaintiffs the ability to protect its copyrighted works, it has filed timely objections to plaintiffs' subpoenas. Comcast's new strategy of simply ignoring the subpoenas until the Plaintiffs are forced to file a motion for order to show cause does not establish that there are unusual circumstances present.

Second, good cause does not exist to justify Comcast untimely objections. Comcast's argument that good cause exists is that Plaintiffs' "subpoenas are overbroad and exceed the bounds of fair discovery." (ECF No. 11 at 5.) Every subpoena issued by the Plaintiffs in the underlying cases, however, was issued pursuant to a court order. *AF Holdings LLC v. Does 1-31*, No. 12-20922 (S.D. Fla. Mar. 12, 2012), ECF No. 6; *Pacific Century International LTD v. Does 1-37*, No. 11-4430 (S.D. Tex. Jan. 13, 2012), ECF No. 5; *Sunlust Pricutres, LLC v. Does 1-120*, No. 12-20920 (S.D. Fla. Mar. 13, 2012), ECF No. 6; *First Time Videos LLC v. Does 1-76*, No. 12-20921 (S.D. Fla. Mar. 13, 2012), ECF No. 6. Each court order set forth the broadness of subpoena and determined that the discovery was fair. Plaintiffs issued their subpoenas in compliance with the underlying courts' orders. If Comcast felt that any of the underlying court orders were erroneous, it could have filed a motion for reconsideration in any of the cases. Comcast chose not to do so and instead simply ignored subpoenas issued to it pursuant to valid orders issued in United States District Courts. It is not Comcast's place to assert veto authority over the orders of Federal Courts, or to challenge the validity of the underlying Courts' orders in the present action, which authorized service of those subpoenas on Comcast.

Comcast states that "[s]ubpoenas identical to the ones at issue have been found by numerous courts—including the Northern District of Illinois—to be overbroad and exceeding the bounds of fair discovery." (ECF No. 11 at 5.) Comcast cites to no authority for this proposition. In fact, none of the cases cited Comcast have found a subpoena to be overbroad or exceed the bounds of fair discovery. (*See generally* ECF No. 11.) Instead, the cases cited by Comcast involve denials of discovery requests or granting of motions filed by defendants or putative defendants in the actions. (ECF No. 11 at 5-9.) Comcast cites to only one case where an Internet service provider challenged a subpoena. (*Id.* at 10) (citing *Pacific Century International v. John*

*Does 1-37,* 2012 WL 1072312 (N.D. Ill. 2012). The court in *Pacific Century*, however, *granted* the plaintiff's motion to compel compliance with its subpoena in regards to subpoenas that sought the identifying information of *party* Doe defendants. *Pacific Century*, No. 12-1057 (N.D. Ill. March. 30, 2012), ECF No. 23. It only denied the motion to compel in regards to *non-party* individuals. *Id.* All four of the underlying cases at issue here solely involve *party* Doe defendants. Thus, the lone support that Comcast can point to relating to the validity of a subpoena served on an Internet Service Provider stands for the proposition that Comcast must comply with the Plaintiffs' validly-issued subpoenas.

Instead of focusing on legal arguments and legal authority regarding Plaintiffs subpoenas and the grounds for objecting to them under Federal Rule of Civil Procedure 45, Comcast makes several substantive arguments *(i.e.* objecting on the grounds of personal jurisdiction, joinder and arguments as to the merits of factual allegations) on behalf of its subscribers. Courts increasingly recognize the absurdity of Comcast's attempts at usurping judicial authority from its subscribers. One federal judge described Comcast's attempts to make arguments on behalf of its subscribers as "pretty amazing." Mot. to Quash Transcript at 95-96, *AF Holdings v. Does 1,058*, No. 12-cv-00048-BAH (D.D.C. 2012), Apr. 27, 2012. Another judge was simply confused by Comcast's borderline sanctionable behavior of raising arguments on behalf of its subscribers. Mot. for Clarification Tr. 15, *Lightspeed Media Corporation v. John Doe*, No. 11-L-683 (Ill. 2012), June 4, 2012, attached hereto as Exhibit A ("What I don't understand is where and why your industry, and Comcast, in particular, has taken the position that it is not a waste of time and a sanctionable conduct on the ISP's part for asserting these repetitively and past the point of giving the court any new information.").

Comcast does not establish any conceptual link between the relief it seeks—being excused from complying with Plaintiff's subpoena, and even the obligation to timely assert an objection—and the legal standard for evaluating its request for such relief. Federal Rule of Civil Procedure 45 sets forth an exhaustive list of grounds on which a nonparty may move to quash or modify a subpoena. Fed. R. Civ. P. 45(c)(3). Those grounds do not include a nonparty's self-endowed immunity from even asserting a timely objection, or disingenuous concerns over personal jurisdiction over nonparties, or joinder in cases where there is not a plaintiff. *Id.* In fact, Plaintiff is not aware of a circumstance where a nonparty avoided compliance with a subpoena based on its subjective views on joinder.

Comcast's *ad hominem* attacks and name-calling do not provide Comcast with a basis to file untimely objections to Plaintiffs' valid subpoenas.

### III. COMCAST'S *AD HOMINEM* ATTACKS AND NAME-CALLING DO NOT PROVIDE ITWITH A BASIS ALLOWING TO IGNORE AND FILE UNTIMELY OBJECTIONS TO DISTRICT COURT-AUTHORIZED SUBPOENAS

Finally, and obviously recognizing the weaknesses of its other arguments, Comcast has reduced itself to making numerous *ad hominem* attacks against Plaintiff, those issuing the other subpoenas at issue here, and their counsel. (ECF No. 11 at 11-14.) Comcast provides no evidence for these baseless claims, and instead attempts to draw the Court's attention away from its meritless legal arguments through character attacks. The Court should strike those portions of Comcast's response as redundant, immaterial, impertinent, and scandalous under Rule 12(f) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."). The truth of the matter is that Plaintiff and the other movant companies do not engage

in any abusive or deceptive legal tactics, and the movants and their counsel have never faced sanctions, disbarment, or punishment of any kind. The Court should not let Comcast's vicious, unsubstantiated character attacks stand, and should strike Comcast's reply.

It is, of course, odd that Comcast would criticize the content of the movants' copyrighted materials, while at the same time running interference in Federal Courts for those who allow use of their IP addresses to steal it. Comcast goes to great lengths to paint the movants as the offenders or perpetrators in this case. The reality is that each movant is the victim here. The infringement of their copyrighted works is taking place on a massive scale, even as Comcast expends tremendous legal resources to prevent the identification of the infringers. Within an hour of posting one of its copyrighted works online, thousands of infringers gain unauthorized access to the work and obtain free copies of it without movants' permission. The infringement is continuous, on-going, and to great detriment to the movants. In order to remedy the situation, the movants are forced to spend large amounts of money hiring forensic investigators and lawyers in order to pursue the relentless infringement of its copyrighted work. This takes time and the movants are forced to wait patiently, while the infringement continues to occur on a daily basis, and third-parties, such as Comcast, routinely delay the relief that the movants are entitled to under Federal copyright laws. It is difficult for the movants to run their businesses under such conditions.

Comcast's main contention with the movants is that their counsel may Comcast's subscribers through either a letter of telephone call. However, as one judge has recently pointed out, it is difficult for Comcast to claim that contacting an Internet subscriber is harassment when that is exactly what Comcast does as soon as one of its subscribers misses a payment. Mot. for Clarification Tr. 19-20, *Lightspeed Media Corporation v. John Doe*, No. 11-L-683 (Ill. 2012),

June 4, 2012, attached hereto as Exhibit C ("You're not about to take that position with your subscribers because you don't like your subscribers when they don't provide their money to you or otherwise behave as subscribers."). Comcast participates in the very same behavior it condemns.

Comcast's *ad hominem* attacks against the movants are made worse by the fact that it is not even a party to the underlying case. Comcast first ignored Federal Court subpoenas served upon them, and then seemingly made an appearance for the sole purpose of attacking the movants. Courts increasingly recognize the absurdity of Comcast's attempts at usurping judicial authority from its subscribers. As set forth above, one federal judge described Comcast's attempts to make arguments on behalf of its subscribers as "pretty amazing." Mot. to Quash Tr. 95-96, *AF Holdings v. Does 1,058*, No. 12-cv-00048-BAH (D.D.C. 2012), Apr. 27, 2012 (Ex. A), while an Illinois Circuit Court judge was simply confused by Comcast's borderline sanctionable behavior of raising arguments on behalf of its subscribers. Mot. for Clarification Tr. 15, *Lightspeed Media Corporation v. John Doe*, No. 11-L-683 (Ill. 2012), June 4, 2012 (Ex. B) ("What I don't understand is where and why your industry, and Comcast, in particular, has taken the position that it is not a waste of time and a sanctionable conduct on the ISP's part for asserting these repetitively and past the point of giving the court any new information."). Comcast is not a super judge that can pick-and-choose which cases it believes are sufficiently meritorious before responding to a subpoena. Nor does a nonparty, such as Comcast, have any right to make an appearance in a case just to attack a litigant it does not like.

While the movants have no doubt that this Court will continue to focus on the legal merits of the case, other Courts have been persuaded by Comcast's *ad hominem* attacks. (*See e.g.*, ECF No. 11 at 12-13.) The movants wishes to alert the Court to Comcast's tactics and

moves the Court to strike the portion of Comcast's response based solely upon them under Rule 12(f) before any legal decisions are influenced by character attacks. The Court should strike those portions Comcast's reply as redundant, immaterial, impertinent, and scandalous under Rule 12(f) of the Federal Rules of Civil Procedure.

        Respectfully submitted,

        AF Holdings, LLC,

DATED: June 8, 2012

    By:    By: /s/ Paul Duffy
            Paul Duffy (Bar No. 6210496)
            Prenda Law Inc.
            161 N. Clark St., Suite 3200
            Chicago, IL 60601
            Telephone: (312) 880-9160
            Facsimile: (312) 893-5677
            E-mail: paduffy@wefightpiracy.com
            *Attorney for Plaintiff*

## **CERTIFICATE OF SERVICE**

  The undersigned hereby certifies that on June 8, 2012, all counsel of record who are deemed to have consented to electronic service are being served a true and correct copy of the foregoing document using the Court's CM/ECF system.

                       /s/ Paul A. Duffy
                       PAUL A. DUFFY